## SUCCESSION OF J. Y. DE EGANA.—ON A MOTION TO DISMISS.

The party who voluntarily executes, either partially or in toto, a judgment rendered for or against him, or who voluntarily acquiesces in or ratifies, either partially or in toto, the execution of that judgment, is not permitted to appeal from it.

In default of funds sufficient to discharge the debts and legacies of sums of money, the testamentary executor shall cause himself to be authorized by the Court to sell the movables and the slaves not employed on plantations, and if they are insufficient, the immovables, to a sufficient amount to satisfy those debts and legacies.

The testamentary executor shall proceed to the sale above mentioned and to the payment of the debts of the succession, in the same manner as is prescribed for curators of vacant successions.

It is inadmissible to say, that the plaintiff could thus partially execute the award, and repudiate those portions of it which were not directly comprehended in the execution.

An account homologated, so far as not opposed necessarily approves and ratifies quoad the creditors who have not opposed the tableau.

The principle is well settled, that a party is not permitted to do an act which he is at liberty to abstain from, and, by a mere reservation, screen himself from the legal consequences of that act. Protestatio actui contraria non prodest.

APPEAL from the Second District Court of New Orleans, *Howell*, J., acting Judge. *Morgan*, for the motion.

ILSLEY, J. This case is before us on a motion to dismiss ; and a reference to some of the most prominent facts is, we think, necessary for a proper understanding, and a correct appreciation, of the grounds upon which the motion is submitted.

On the 11th January, 1864, the judgment now complained of was rendered, and on the 1st February, of the same year, after a trial which lasted four days, on the appellee's prayer for a rehearing, was reaffirmed and maintained by the lower Court.

On the 23d of the same month, the appellees were ruled to show cause " why they should not forthwith comply with the judgment, or in default thereof *be visited with such pains and penalties as the Court, in pursuance of law, may deem proper to inflict.*" This rule was made absolute, on the 1st of March, so far as to order the delivery into the hands of the executor, of the cash and notes specially referred to in the rule. On the 26th April, another motion was filed against M. A. de Lizardi (the liquidator's agent), asking that he be ordered to show cause why " *he should not be imprisoned for refusing to comply with the judgment of the 11th June*, 1864; and, on the 18th May, this rule was made absolute," so far as to order the defendant

to deliver to the executor, within five days, all moneys, bills, notes, books, assets, accounts, vouchers and evidences of debt in his hands, belonging to the succession of J. Y. de Egana, and which are mentioned in the judgment of the Court, rendered on the 11th January, 1864.

Two writs were then issued to the Sheriff—a writ of possession on the 13th, and a writ of fieri facias on the 28th June.

On the 13th July, a rule was taken by M. J. and M. A. de Lizardi, upon the executor and the Sheriff, in which they allege that they had made a full and complete settlement with the Sheriff, and prayed that the executor and the Sheriff be ordered to show cause why the judgment should not be declared satisfied ; and they (the said Lizardis) discharged from all liability in the premises.

This rule was made absolute on the 27th of July, and the Sheriff, on the 1st August, returned satisfied, the writs of possession and of fieri facias, herein above mentioned.

On the 3d November the executor presented a petition, in which he states that he files with it his tableau No. 2, showing a balance in his hands, for distribution among the creditors, of $54,813 53, and a document attached, A. A., showing a settlement made by him with the liquidator, under the execution and orders of Court.

In his tableau No. 2, the executor charges himself as follows :

| | | |
|---|---:|---:|
| By balance on hand, as per former tableau | | $3,475 17 |
| Less the following payments made on judgment of Court : | | |
| Clerk Second District Court | $ 268 90 | |
| Durant & Hornor | 1,000 00 | |
| Advertising | 12 00 | |
| | | 1,280 90 |
| | | $2,194 27 |
| Charles DeLassus' note, $764, and interest, paid | | 930 80 |
| Cash, from liquidator, M. J. de Lizardi, as follows: (see Sheriff's receipt, No. 1) | | |
| Amount deposited in Citizens Bank, in the joint names of Caballero, executor, and Lizardi, liquidator | | 45,702 13 |
| Cash in bank bills | | 97 99 |
| (For the above items, see document A A.) | | |
| Cash, from the liquidator (see Sheriff's receipt, No. 2), document A A | | 16,337 |
| | | $65,262 30 |
| From which deducting the privileged claims, amounting to | | 10,448 77 |
| There remained in the hands of the executor a balance, to be distributed, of | | $54,813 53 |

In document A A (see appendix, tableau No. 2), which is filed with and referred to in the tableau, it clearly and distinctly appears that the note of Charles De Lassus, the sum of $45,702 13, that of $97 99, and that of $16,337 11, which, after deducting the payment of the privileged

claims, constituted the balance of $54,813 53, proposed to be distributed *were received by the executor from Mr. Lizardi in satisfaction of the judgmen subsequently appealed from.*

On the 14th November, one of the creditors, Mr. Pierre Landreaux, filed an opposition to the executor's tableau No. 2, in which he says that he has no objection to the distribution of the sum of $54,813 53, now intended to be distributed herein ; but, on all other points, he opposes the homologation of the tableau.

On the same day, twelve other creditors—Henri Bassie, Widow Poydras de Lallande, Ulysse Ducasse, Jacques Descrimes, Eugene Rochereau & Co., Mark N. Boule, Widow H. Pargoud, Caroline Heye Vincent, Leopold Jeannet, Charles Gross, Charles A. Hensler and Widow Andre Castelle—filed a similar opposition, in which, adopting the very words of Mr. Landreaux, they say *" that they have no objection to the distribution of the $54,813 53, intended to be distributed herein;"* but, in all other respects, they opposed the homologation of the account.

On the 26th of the same month, twenty-nine creditors (R. Brugier, A. LeBlanc, Widow LeCoul, W. A. Gasquet, Widow Jourdan, G. Brusle, A. Roger, A. Beryorot, E. Rousseau, R. B. Aucoin, Daniel Jese, Widow Charles Fortier, Widow Harris, tutrix; The Star Insurance Company, F. Gruna, executor of Wm. Vogel; L. & A. LeBeur, E. Durrive, Arthur Shiff, James Flint, Wm. Avery, executor of McKenna ; The Louisiana State Bank, Carleton Hunt, King & Devine, transferrees of Shiers, King & Co., Warneken & Co., R. A. Boure, executor of J. L. Harris; F. P. Ducongé, A. Merle Daubigné, Reichart & Co., and Cramer & Co.) came into Court, and in their petition of opposition to the homologation of said tableau No. 2, prayed the Court to order that the sum of $54,813 53, now admitted by the said executor to be in his hands, shall be distributed to the creditors.

On the same day and month, another creditor (R. H. Bailey) filed his opposition to said tableau, and said he had no objection whatever to the distribution of the sum of $54,813 53, intended to be distributed by said tableau.

On the 1st of December, four other creditors (the New Orleans Canal and Banking Company, Castello & Harispe, W. O. Denegre, and West & Renshaw) joined in an opposition to the said tableau, in which they pray that the said sum of $54,813 53 may be forthwith distributed by the said executor among the creditors, according to the amount due them, without interest.

On the 22d of the same month, five of the above named opponents, to wit : The New Orleans Canal and Banking Company, Castillo & Harispe, W. O. Denegre and West & Renshaw, and Cammack and Carleton Hunt, applied to the Court for a devolutive appeal, which was granted to them.

On the 2d day of February, 1865, the very last day of the year within which they were permitted to appeal, the other opposing creditors, with the exception of R. B. Aucoin, Daniel Jex and Widow Charles Fortier,

joined with the Louisiana Mutual Insurance Company, and Messrs. A. &
M. Heine, two creditors who had not opposed the homologation of the
tableau, in a petition praying for a devolutive appeal, which was also
granted to them.

Now, with these facts, which appear from, and are clearly established by
the record, we are called upon by the appellees, M. J. & M. A. de Lizardi,
to dismiss the above mentioned appeals, upon the ground that the ap-
pellants have voluntarily executed the judgment appealed from, or have
voluntarily acquiesced in and ratified the execution of it.

The appellants, on the other hand, strenuously deny that they ever did
execute or acquiesce in the execution of a judgment, which they, on the
contrary, denounce as containing ''egregious'' errors, highly prejudicial
to their interests.

It is not our province, at this stage of the proceedings, to examine into
the merits of the case, and say whether the judgment of the lower Court
contains egregious errors, and whether those errors are prejudicial to the
interests of the appellants, or to those of the appellees.

Our task is simply to determine whether, by their voluntary acts in exe-
cuting or ratifying the execution of the judgment, the appellants have
lost their right of appeal, and cannot be listened to, in this Court.

It cannot be controverted that, under the laws and jurisprudence of
this State, the party who voluntarily executes, either partially or in toto,
a judgment rendered *for* or *against* him, or who voluntarily acquiesces in
or ratifies, either partially or in toto, the execution of that judgment, is,
not permitted to appeal from it.   C. P. 567; *Williams* v. *Duer*, 14 L. 523;
*State* v. *Judge of the Parish Court*, 4 Rob. 85: *Campbell* v. *Orillon*, 3 A. 115;
*Huhart* v. *Golden*, 7 A. 233; *Landry* v. *Connelly*, 4 R. 127.

That the judgment in this case has been executed is shown by the fi. fa.
and the writ of possession; by the return of the Sheriff thereon; by the
judgment of the Court declaring it satisfied.   The question, then, is, was
it executed by the appellants ; and, if not, have they consented to
acquiesce in, or ratified the execution?

It is contended on behalf of the appellees, that the party who enforced
the execution of the judgment in this case, had authority to do so for and
in behalf of the creditors, not only because, as executor, he was the legal
representative of the heirs and creditors of the deceased, but because the
judgment itself expressly and nominally designated him as the party to
whom the execution of the judgment was confided, and ordered him
peremptorily to proceed forthwith to the final settlement of the estate.
This view of the law seems to be concurred in by twenty-nine of the
appellants, who say that J. M. Caballero, as *executor* of the estate, was
bound in law, in order to protect the rights of the *heirs* and *creditors*, the
decree above referred to (meaning the decree appealed from by them
being final, to proceed to the execution *of said decree.*

The others, however, contend that the testamentary executor is an
agent of the deceased, and, perhaps, of the heirs, but not of the credi-

tors; and that Mr. Caballero, therefore, was not the legal representative of the creditors, who are not bound by his acts, and who may oppose or repudiate them.

In the matter of the *Succession of Hawkins*, 2 A. 925, this Court held. that an administrator is the *trustee* of the creditors; that his first duty is. to them, and his imperative obligation to watch over their interest. This principle, we think, implies with equal force to executors; for the law makes it their imperative duty to see to the payment of the debts of the succession, and vests them for that purpose, with the power to sell the personal, and, if need be, the real property of the estate. C. C. Arts. 1661, 1663. It seems to us, therefore, that Mr. Caballero, as executor, was authorized, nay, bound, to proceed to the execution of the judgment, and that his acts, in this matter, are binding upon the creditors, so far, at least, as the Lizardis are concerned; and, without prejudice of the right, which, in common with all principles, they have to disapprove the acts of their agent, and hold him responsible for them, if those acts are such as they pretend them to be, and they have not ratified them. But, conceding that Mr. Caballero was not the legal representative of the creditors and appellants, it cannot be contested that the lower Court. constituted and appointed him their agent, for the very purpose of enforcing and carrying out the execution of the judgment.

It is true they now contend that they were not parties to that judgment, but it clearly results from their proceedings in the record, and from their own admissions, in their printed brief, that they had filed oppositions to the amounts, *both of the executor, Caballero, and the liquidator, Lizardi, in which they sought to render both directly liable to them.*

This certainly made them parties to the whole proceedings, and privies to the judgments that were rendered therein.

Besides, on the trial of Lizardi's motion for a rehearing, which lasted four days, they appeared every day, by their counsel.

It is true, they say that they did not oppose the motion; but we are. not at liberty to travel out of the record; and we are bound to conclude, from what appears in it, that, if they did not oppose, they did not assent to Mr. Lizardi's prayer, or else the trial could not have lasted four days, and clearly could not have resulted in a judgment which dismissed the motion; and, in the language of their opposition, maintained and affirmed the judgment of 11th January, 1864; and held that Manuel A. de Lizardi was before the Court as agent of Manuel J. de Lizardi, and bound *to hand over to the executor all the assets of the estate.* It is obvious, then, that the appellants, who, by their own voluntary acts, had made themselves parties to the whole proceedings below, and were privies, both to the decree of January 11th, 1864, and to the judgment discharging the rule for a new trial, knew, or were bound to know, that Mr. Caballero was authorized, nay, ordered, if not by the law, at least, by the judgment of the Court, to enforce the execution of the decree appealed from.

It was their duty, then, if dissatisfied with that decree, to have pre-

vented the execution of it, either by assenting to the rehearing prayed for, or by appealing *before*, and not months *after*, that execution had taken place. They, however, thought differently, and suffered the judgment to be executed before taking any steps against it. Under these circumstances, we can but construe their silence and inaction into a formal acquiescence, on their part, and hold them bound by the acts of their agent.

But, admitting that Mr. Caballero was authorized neither by the law, nor by the decree of the Court, to execute the judgment, yet, there are circumstances, in this case, which show conclusively that the appellants have fully and completely ratified his acts, whether originally authorized or not.

In the petition which he presented on the 3d November, 1864, Mr. Caballero clearly and distinctly states, that he files his tableau, No. 2, showing a balance in his hands of $54,813 53, which he proposes to distribute among the creditors, *and a document, lettered A A, showing the settlement made by him, with the liquidator, under the execution and order of the Court.*

In his account, he explains, how that sum of $54,813 53 happened to be in his hands; and shows, clearly and distinctly, that it is the balance of a larger amount, which he had received, through the Sheriff, from the liquidator, M. J. de Lizardi.

In the document A A, which is annexed to the account, and to which Mr. Caballero especially refers, it is distinctly and clearly made to appear that the note of Charles de Lassus, the several amounts mentioned in the account which, after deducting the amount of the privileged claims, constitute exclusively the balance of $54,813 53, proposed to be distributed among the creditors, *were received by the executor, from Mr. Lizardi, in satisfaction of the judgment.*

It is, therefore, evident, that, when they opposed, as they unquestionably did, in the opposition above referred to, the distribution of the $54,813 53, the appellants were aware that the items included therein, resulted from the execution of the judgment; and this, in our opinion, can be regarded in no other light than as an assent to, and execution of, the judgment by the appellants.

It is true the consent of the appellants to the distribution of the funds received by the executor, in satisfaction of the judgment, is coupled with the reservation of their rights to have the judgment set aside, by an action of nullity, or appeal, or otherwise; but this reservation can be of no avail to them.

The principle is well settled that a party is not permitted to do an act which he is at liberty to abstain from, and, by a mere reservation, screen himself from the legal consequences of that act.

Protestatio actui contraria non prodest.

It is also true, that this was but a partial execution; but, in the case of *Williams* v. *Duer*, above quoted, the Court held that the plaintiff, having

acquiesced in *a portion* of the judgment, could not be permitted to appeal from it; and, in *Cobb* v. *Parham*, 4 A. 150, where the plaintiff had partially executed an award, rendered against him, the Court said : "It is inadmissible to say that the plaintiff could thus partially execute the award, and repudiate those portions of it which were not directly comprehended in the execution.

L'exécution partielle démontre, comme l'exécution totale, la volonté de confirmer l'acte vicieux; c'est une approbation tacite. Duranton, vol. 13, No. 280.

It may not be improper here to remark, that two of the appellants, Messrs. A. & M. Heine, and the Louisiana Mutual Insurance Company, have filed no oppositions to the account of the executor. They are, consequently, bound by the judgment rendered on the 19th January, 1865, which, by homologating the account, so far as not opposed, necessarily approves and ratifies, quoad the creditors who have not opposed, the settlement of the executor with M. Lizardi.

Under the circumstances, and after a minute and careful examination of the facts, we are constrained to say that, by their own voluntary acts and deeds, the appellants have fully and completely ratified the execution of the judgment by the executor, and have, consequently, parted with the right of appeal granted to them by law.

It is therefore ordered, adjudged and decreed, that the appeals of the above named appellants be dismissed, and that they pay the costs of said appeals.

HOWELL, J., recused.