On the Merits.
NIOHOLLS, J.
The prayer of the plaintiffs is that a writ of mandamus issue commanding the defendants (naming them), being the president, officers, and members of the board of trustees of the Eastern Orthodox Church of the Holy Trinity, to convene in general meeting all members in good standing of said church for the purpose of holding an election for board of trustees as provided in the charter of the corporation, or that they show cause to the contrary, and that said writ be made peremptory. The court ordered the writ to issue as prayed for.
The application of plaintiffs was based upon allegations: That they .were members in good standing of the corporation. That by its charter all the powers of the congregation were vested in a board of trustees, which should be elected on the first Sunday of May of each year. That it was provided in the charter that the first election thereunder should be held on May 5, 1907. That no election had been held said day. That the board of trustees in office on said date had failed to call and convene a meeting qf said congregation for the purpose of holding said election. That relators had requested the officers to do so, but they 'had failed and refused to do so, and, in fact, had no intention of doing so, and were thus continuing themselves in office in violation of law and of the act of incorporation. That certain named parties constituted the board of trustees whose term of office expired on May 5, 1907.
That relators as members of said church had the right to participate in said election. That they were without relief by the ordinary process of law, and that it was necessary that a writ of mandamus issue in the premises commanding the de facto board of trustees to convene at once the members of the congregation in general meeting for the purpose of holding an election. They prayed accordingly. Defendants excepted that rela-tors’ petition did not disclose a right or cause of action; that said petition did not comply with the law, in that it had not been sworn to according to law; that no good could come by perpetuating the writ, as the meeting and election sought to be called and held was called and said election had been held, all of which was well known to plaintiffs, and they further knew that arrangements looking to said meeting and election were being made long before this proceeding was filed; that said plaintiffs had no right in fact or in law to bring and maintain this action, and they were not members in good standing in said congregation. In view of the premises, they prayed that petition of plaintiffs be dismissed, and that said alternative writ of mandamus be set aside, with costs. Reserving the benefit of these exceptions, defendants answered. They admitted that all the corporate powers of said congregation were *155 vested and exercised by a board of trustees, composed of nine members in good standing, and that said board should be elected on the first Monday of May of each year, and Said trustees should immediately after their election take charge of the affairs of the congregation and shall elect from among their members a president, a first vice president, a second vice president, and a secretary-treasurer.
That the charter of said Orthodox Church of Holy Trinity which was passed before A. Guilbault, notary, on May 18, 1906, and recorded in mortgage office, Book 849, folio 39, provides that the following named members shall constitute the first board of trustees of said congregation, to wit: Marco Popovich, Louis G. Stratakos, John G. Libadiote, Deme-try B. Ohalimeris, George J. Cajoles, Stratie Christo, Nicholas Rambotis, Constantine Scar-latos, and John G. Galagateis — which trustees were unanimously elected at a meeting of the congregation held on May 6, 1906, at which the amended charter of the congregation was also adopted as the original law of the congregation, the said trustees to hold office until the election to be held on May 5, 1907, and until their successors have been duly elected and qualified.
That said charter also provides in article 55 that no failure to elect shall be regarded as a forfeiture of the charter, and that any vacancy occurring on said board shall be filled by the remaining directors.
That said charter provides that the first election under said charter shall be held on May 5, 1907, but that while said meeting and said election were not held on said date arrangements looking to said meeting and election have been going for some time, and, in fact, long before the filing of this petition, the notices for said meeting and election had already been formulated, which was well known to relators, and that the intention of the board of trustees to call this meeting and election was communicated in writing to said relators and others before this proceeding was begun at a time when said relators attempted to convene and hold an alleged meeting of said congregation.
That, when these proceedings were filed, relators well knew that the trustees of said congregation were preparing to send out the notices and making other arrangements for said meeting and election, and, in fact, on July 11, 1907, in the church of said congregation said meeting and election was held, and at which meeting relators attended and took part in the proceedings of said meetings with all of their might and force, the whole as will more fully appear from certified copies of said meeting, which is hereto attached and made part hereof.
Respondents secondly deny that they have ever been requested respectfully and in proper form to call an election or meeting of said congregation, and further deny that they ever refused to call any such meeting or election, or to carry out any of the duties prescribed for them by charter and laws of said congregation.
Respondents deny the authority of the rela-tors to bring a suit 'for mandamus or to stand in judgment, not being members in good standing on the books of said congregation.
In view of the premises, they pray that the alternative writ of mandamus heretofore issued herein be set aside and annulled, and that relators’ demand be rejected at their costs, and for all general and equitable relief.
After hearing, the district court made the ¿lternative writ of mandamus which had issued peremptory, and decreed that there be judgment in favor of relators ’commanding the defendants to forthwith convene in general meeting all members in good standing of the Eastern Orthodox Church of the Holy Trinity for the purpose of holding another election for the board of trustees, the whole as pro- *157 Tided in the charter of said corporation, the defendants to be taxed individually for all costs.
Defendants appealed.
The district judge assigned no reasons for his judgment, hut we presume from the application for a new trial made by the defendants that his judgment was based upon the fact that the election which was held on July 11th was not held under an order made by the board of trustees for the same, but under directions of the president of the board himself without prior authority being given to him to do so.
It ax>pears from the evidence: That on the 24th of June, a few days before the present proceedings were instituted (on the 29th of June), a notice signed by N. Rambotis, president, and Geo. J. Cajoles, secretary and treasurer,' was printed and sent to the members, or some of the members,.of the church of the Holy Trinity, notifying them that, in accordance with article 4 of the charter of the corporation, there would be an annual meeting of the members of the congregation for the purpose of electing five members of the board of trustees of said congregation for the term of two years each, and four members for a term of one year each. That the dues of said congregation were 50 cents per month, which began to run from May 1, 1900, and that, in order to be able to vote at said election and take part -in the business therein, said dues must be paid since May 1, 1906. That at said meeting the first reading would be made of the proposed amendment to the by-laws of the congregation changing the meetings of the board of trustees from the last Sunday of each month to the last Thursday in the months of March, June, September, and December.
That at this meeting would be transacted important business, among which would be to authorize the board of trustees of the congregation to invest in the best possible manner with good security the funds of the congregation then in bank. That said meeting would be held at the church, No. 1222’ North Dorgenois street, on Thursday, July 11, 1907, at 9:30 a. m. That the receipts for dues owing by each member would be ready at that meeting. The members were requested to be prompt. On the 11th of July a meeting was held under the notice so issued, and was duly called to order. The-minutes show that thereupon M. O. Yeros handed the secretary two documents, dated July 10, 1907, one of which purported to be a request from members of the congregation asking for a postponement of the meeting, the other purporting to be a proxy to said Veros by parties who alleged themselves to be members of the congregation, authorizing the said Yeros to appear and vote for them on all questions before the meeting. That said communications were received, and a committee of two was by a unanimous vote appointed to examine the names on said petition and report back to the meeting whether or not the signatures on said documents were of members in good standing in the congregation. That a collection of dues was then ordered, and $57 were collected from certain parties named. A motion was then made and seconded that all members, who were in arrears for more than six months be dropped from the rolls of the séc-retary-treasurer subject to reinstatement according to the by-laws. Mr. Veros protested against the mode of proceeding on behalf of himself and his principals whom he represented. The motion was adopted by a vote of 16 yeas to 4 nays.
The committee which had been appointed reported that it had examined the list of signers filed by Mr. Yeros, with the result that none of the protestants were members-of the congregation in good standing, and that a majority of them had never been members. The report of the committee was-approved, and a motion was adopted that the communications of the protestants and *159 the principals of Mr. Yeros be laid on the table. A motion was made and carried that the congregation proceed to the election of a board of trustees, five to serve for two years and four for one year. The minutes declare that the election took place and certain named parties were elected members of the board and were installed. A committee was then appointed to prepare amendments to the by-laws and to report at some future meeting.
It appears from the testimony that the church of the Holy Trinity had by-laws, but they were not produced; hence we do not know at whose instance and under what circumstances a general meeting of the congregation has to be called. The meeting of the 11th of July, at which the election for a new board of trustees was held, the erection which respondents rely on to defeat the mandamus asked for, was called at the instance of the president himself, and not under any instructions or directions of the old board of trustees; the last board meeting having been held in 1906.
The evidence shows that on some date prior to June 24, 1907, certain members of the church presented an application, in which they stated that the first Sunday of May had long passed and the meeting for that day had not been held. They requested the president, the vice president, the treasurer, and all the members of the board of trustees to call a special meeting on the 24th of June (Monday at 8 p. m.) for the purposes of the benefit of the church. On the 24th of June, 1907, the receipt of this letter was acknowledged, and a reply made to the following effect by the first vice president and the secretary:
“Gentlemen: The president, N. Rambotis, of the Eastern Orthodox Church being absent from the city as vice president of said church, I inform you that the management of the affairs of the church have been placed by 'the congregation in the hands of board of trustees elected in accordance with organic law of the congregation. Should any member in good standing of the congregation desire to call a special meeting of the board of trustees of said church or of the congregation for the purpose of discussing important business of said church, said special meeting will be cheerfully called upon a request for same made in accordance with the organic laws of said congregation.”
Two documents were presented by Mr. Yeros at the meeting called by the president for the 11th of July, both dated July 10, 1907, signed by parties representing themselves as members of the church. One of them was to the effect that:
“Whereas a meeting of said church has been called on Thursday, July 11, 1907, at 9:30 o’clock a. m., and whereas our occupation and calling will not permit us to attend at said hour, that said hour named is unusually early, that no meetings of said church have been held at such hour, that they have all been held in the evening and after working hours, that for us to attend said meeting will cause financial loss and great inconvenience, we therefore petition that said meeting be postponed and held any day hereafter designated and said meeting be called after the hour of 6 p. m.”
The other was to the following effect:
“The undersigned members of the Eastern Orthodox Church of the Holy Trinity hereby designate and appoint Aristide Yeros, or such person or persons as he may designate, our special agent and attorney in fact, and in our name and behalf to attend a meeting of said church which has been called for July 11, 1907, at No. 1222 North Dorgenois street at 9:30 a. m., and at such meeting to in our name and behalf on all matters stated in the notice of meeting, and in such manner as to our said attorney or his substitute may seem best and generally to do and perform all things and vote upon all such matters as may come up at said meeting, and the same as we and each of us do or should do if present.”
The disposition made of these two documents by the meeting has been shown. A question arose on the trial as to whether Veros voted at that meeting. He testified that he did not, and we are satisfied that he did not.
At several stages of the trial, when the details of the election held on the 11th of July were being inquired into, the district judge stated that investigation in that line was irrelevant, as the validity of the election was an issue on the trial of the mandamus; that, if the validity of the election was questioned, *161 it should be attacked in an action for that purpose. The claim was made by relators’ counsel that what was termed by respondents “a meeting was not an irregular meeting or a meeting attended with some irregularities,” but in law and in fact no election at all, and absolutely null by reason of the fact that the president of the board of trustees was without authority to call it, and it could and should be ignored in the consideration of the issue before the court, and the court’s final action discloses that he adopted that view of the legal situation.
It is beyond question that the respondents constitute the legal board of the trustees of the church ; that, although it was contemplated by the charter of the church that their term of office should have expired on the first Sunday of May, 1907, it none the less provided that they should continue in office until their successors were elected. The first Sunday of May is the date fixed by the charter for the election of the board of trustees. No provision is made for an election in the contingency that the one contemplated by the charter should not be held. Relators and respondents both proceed upon the theory that the failure to elect could be remedied by a special election for that purpose to be held on a day to be designated. The rule in matters of mandamus seems to be that where, after a petition for a mandamus has been presented, the respondents do the act sought to be enforced thereby, the relator is not entitled to a peremptory writ. 19 Am. & Eng. Ency. of Law, p. 910; People ex rel. Lantz v. Common Council of City of Mount Vernon, 95 App. Div. 75, 88 N. Y. Supp. 493; State ex rel. Comeau v. Clerk of Court, 46 La. Ann. 1290, 1292, 16 South. 207; State ex rel. Romain v. Board, 49 La. Ann. 578, 21 South. 731.
Respondents invoke that rule in this case. They also urge that relators participated in the election, and are estopped from questioning its regularity, and that a party is not permitted to do an act which he is at liberty to abstain from, and by a mere reservation avoid the legal consequences of that act.
They cite 26 Am. & Eng. Ency. of Law, 995, verbo “Estoppel”; 10 Cyc. 786, No. 4; Jones v. Milton & Rushville Turnpike Co., 7 Ind. 547; Columbia Nat. Bank of Tacoma v. Mathews, 85 Fed. 934, 29 C. C. A. 491; Succn. of De Egana, 18 La. Ann. 59; Railroad v. La. Construction Co., 109 La. 13, 33 South. 51.
We do not find that relators participated in the election. They would not have been permitted to have done so had they wished. They protested against the action of the meeting. It is by no means clear that the parties giving the power of attorney to Veros contemplated his voting on the matter of the election of trustees.
The question we have to decide is whether the election of the 11th of July is so radically null and void that it can and should be legally ignored in passing on relators’ right to the mandamus prayed for, or whether we should refuse the relief, and force relators to attack the election through a direct action.
We do not think that relators should be forced to have recourse to a direct action when respondents set up the election of July 11th as barring their right to have had recourse to mandamus. They were entitled to resist this defense by urging the absolute nullity of that election for want of authority on the part of the parties who called it to have done so. Paxton v. Cobb, 2 La. 139; Alter v. Pickett, 24 La. Ann. 515. The president and the secretary of the church were only authorized to call the meeting under instructions from the board of trustees.
Cook on Corporations (4th Ed.) §§ 592, 593; Dusenbury v. Looker, 110 Mich. 58, 67 N. W. 986; Thomson’s Commentaries on the Law of Corporations, § 3861; Morawitz on Private Corporations, § 537; Power of Presidents.
We think the judgment appealed from is correct, and it is hereby affirmed.