THOMAS HARVEY v. GIRARD NATIONAL BANK.

ERROR TO THE COURT OF COMMON PLEAS NO. 4 OF PHILADEL-
PHIA COUNTY.

Argued January 4, 1888—Decided March 19, 1888.

The plaintiff's purchasing agent, in payment for a purchase delivered a draft upon the plaintiff, payable at the Shackamaxon Bank. Advised thereof plaintiff deposited funds with said bank to meet the draft, with

Statement of Facts.

instructions to honor it. The draft, transmitted for collection by the payee, reached the Girard National Bank for collection on May 27th, and would have been paid if presented in business hours on May 27th or May 28th, but, being transmitted by mail on the latter date instead of by a messenger who could have reached the place of payment in less than an hour, it was not received by the S. Bank until it had suspended. Payment being refused, and the draft returned to the G. N. Bank, the plaintiff, with knowledge of the facts, under protest and to protect his credit, paid the amount to the G. N. Bank and received the draft. In a suit against the G. N. Bank: *Held,*

1. That, by the neglect of the holder (and the negligence of the defendant was the negligence of the holder) to present the draft for payment, resulting in the loss of his deposit by the plaintiff, the latter was discharged as between the holder and himself both as to the draft and the consideration therefor.

2. There being in the case no element of compulsion, actual, present and potential, in inducing the payment, the protest of the plaintiff and his purpose to preserve his credit were insufficient to render the payment involuntary and leave with the plaintiff a right of recovery, either upon the ground of negligence or upon a claim to subrogation.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 180 July Term 1886, Sup. Ct.; court below, No. 506 June Term 1885, C. P. No. 4.

On June 3, 1885, Thomas Harvey brought an action in case against the Girard National Bank, to recover damages sustained by the alleged negligence of the defendant bank to present for payment a draft upon the plaintiff at the place where payable and where funds had been deposited to meet it. The plea was not guilty.

By agreement of parties, the cause was tried on May 21, 1886, without a jury, before WILLSON, J., who on May 28, 1886, announced the following findings of fact and law:

The declaration alleges a promise on the part of the defendant to the plaintiff that it would promptly and properly make presentment and demand, but, in the absence of any evidence of an express promise, he must rely upon an implied undertaking to that effect, if any can be inferred from the facts of the case.

From the evidence produced before me, I find the following conclusions of fact, viz.:

1. That, on May 25, 1885, Thomas R. Alcorn, who was the agent of the plaintiff authorized to purchase live stock on his account, and to draw upon him for the price of such stock, when purchased, bought for the plaintiff a quantity of sheep from Swope, Hughes & Waltz of Buffalo, New York, and paid for the same by a sight draft drawn upon the plaintiff in the following words and terms, viz.:

$799.22.                    BUFFALO, N. Y., May 25, 1885.

At sight, without grace, pay to the order of Swope, Hughes & Waltz, Seven hundred and ninety-nine and twenty-two one hundredth dollars at the Shackamaxon Bank.

Value received and charge the same to account of
To                                THOMAS R. ALCORN.
Thomas Harvey, Philadelphia, Pa.

2. That Alcorn thereupon advised the plaintiff of the drawing of the said draft, and on May 26, 1885, the plaintiff took the sum of $842.71 to the Shackamaxon Bank, handed the same to Mr. Milligan, the receiving and paying teller thereof (the cashier being sick and absent), informed him that a draft for the sum of $799.22 had been drawn upon him, and instructed the teller to pay it when it should be presented, which he said he would do. This sum of money, $842.71, was then entered to the credit of the plaintiff on the books of the Shackamaxon Bank.

3. The draft in question was indorsed over by the payees thereof to the Marine Bank of Buffalo, or order, by that bank indorsed over to the Bank of North America, New York, or order, and again, by the latter bank, indorsed over to the order of the defendant, the Girard National Bank, for collection and remittance "to the said Bank of North America." The defendant received the draft on May 27, 1885.

4. The defendant bank sent the said draft by mail to the said Shackamaxon Bank, on May 27, 1885, and it was received by the latter bank on May 28, 1885, and its receipt acknowledged in a communication of the same date announcing its suspension. No other presentment of the draft, or demand for its payment, was made until June 1, 1885, when payment was formally demanded and refused, as appears by the certificate of the notary.

Statement of Facts.

5. If the said draft had been presented by an officer or messenger of the defendant at the Shackamaxon Bank, on either May 27, or May 28, 1885, it would have been paid.

6. The defendant bank was the agent of the Shackamaxon Bank for the purpose of making exchanges and settlements through the Clearing House. It had telephone connection therewith, and was distant therefrom, in point of time not over three quarters of an hour by the usual street car route.

7. The Shackamaxon Bank, though it continued to transact business in the usual manner until the close of business hours on May 28, 1885, did not open its doors for business on May 29, 1885, in consequence of its failure. At that time, the time of its failure, the balance standing to the credit of the plaintiff in his account with that bank was in excess of the amount of the draft in question. That balance, being of $1,049.87, still remains to his credit on the bank's books. The Shackamaxon Bank has never resumed payment, and its affairs are in process of liquidation.

8. On June 2, 1885, the plaintiff having been informed by the defendant that it held the draft in question, paid to the defendant, under protest, the amount due thereon and took it up. At the same time he received from the defendant the following statement in writing, viz.:

PHILADELPHIA, June 2, 1885.

THOMAS HARVEY, ESQ.

Dear Sir:—Thomas R. Alcorn's draft upon you for $799.22 was received through the Bank of North America of New York, on May 27th. Payment was refused. The Shackamaxon Bank returned to us, and received by us June 1st, on account of failure of the bank.                    WHITEMAN,
                                                            Cashier.

Upon the facts of this case, as stated, I reach the following conclusions:

1. That the defendant bank was negligent towards the holders of the draft in question, in that it did not present the said draft at the Shackamaxon Bank and demand payment thereof in such manner as to obtain either payment or refusal to pay, before the close of business hours on May 28, 1885.

2. [The liability of the defendant arising from the negli-

gence just referred to was terminated and ceased when, on June 2, 1885, the plaintiff paid to it the amount due upon the draft, and thereupon, took it up;][1] there being no allegation that the defendant has failed to account for and pay over the money thus collected.

3. [The defendant, merely because of the relation which it assumed, in the ordinary course of business, towards the collection of the draft, under an authority which came primarily from the payees of the draft, owed no legal duty to the plaintiff, which was violated by its failure to present and demand payment of the draft, before the end of business hours on May 28, 1885.][2]

4. Even if the proposition last stated be not sound, in its broadest application, [the plaintiff has no right of action against the defendant under the circumstances of this case.][3] As I look at the case, [the plaintiff was not in any legal sense or degree injured by the failure of the defendant to obtain the money due upon the draft before the suspension of the Shackamaxon Bank. The only interest which either he or his agent, the drawer of the paper, had in it, was that it should be the instrument to pay for the sheep purchased. This, however, was effectually accomplished, under the facts of the case, without the payment made by the plaintiff on June 2, 1885, when he took up the draft.][4] [That was purely a voluntary payment by him. He was not bound to make it. As regarded all parties interested in the paper, he was discharged from further liability of every kind, by the negligence of the defendant bank, which represented the holders of the draft for its collection.][5] [The debt to the payees was paid, so far as the plaintiff was concerned, when the defendant negligently failed to present the draft in time to obtain payment of it. Undoubtedly the defendant then became responsible to the real holders of the paper, and they could have recovered against it, but they had no claim against the plaintiff. He had afforded them the means of payment and they had lost it, by negligence for which they were responsible. The effect of this was payment, as between the payees or the holders and him.][6]

It is unfortunate for the plaintiff that he did not stand upon his rights, and leave the holders of the draft to their action

against the defendant.   He would then have saved the amount, which he voluntarily paid to take up the draft.   This payment was actually in relief of the defendant, without any advantage to him.   [It resulted in destroying the claim which the holders would otherwise have had against the defendant;][7] a claim founded upon a state of facts that relieved him from liability upon the paper or in the transaction out of which it grew.   [I am not able to see that the plaintiff acquired any new right as against the defendant by reason of the payment made by him, to take up the draft on June 2, 1885.][8]   [There was no express contractual relation between the plaintiff and the defendant,][9] and it seems to me that the latter discharged the whole implied obligation towards all to whom it owed such an obligation, when it obtained the money due upon the draft and transmitted that amount to its predecessor in the line of collection.

I must, therefore, find and decide in favor of the defendant, which I hereby do.

Judgment having been entered for the defendant bank, the plaintiff thereupon took this writ, assigning for error:

1–9.  The conclusions of law embraced in [ ] [1 to 9]

10, 11.  The finding in favor of the defendant instead of for the plaintiff for the whole amount claimed.

*Mr. F. Carroll Brewster* (with him *Mr. Octavius A. Law*), for the plaintiff in error:

1.  The point here is, can the plaintiff recover from the defendant?  Want of privity between the parties cannot properly be interposed.  If one pay money to another for the use of a third party, or in any manner place that other in position where he should receive money for such use, the depositary is liable in assumpsit at the suit of him who is beneficially concerned, and this notwithstanding the want of direct privity: Bullitt v. M. E. Church, 26 Pa. 108; Evans v. Waln, 71 Pa. 69; Sheffer v. Montgomery, 65 Pa. 329; Keller v. Rhoades, 39 Pa. 513.  But the case of the plaintiff is strengthened by the fact that the action, not in form alone but essentially, sounds in tort.  One injuring another by his negligent acts cannot, upon suit for such injury, deny his responsibility therefor, to persons other than the one with whom his dealings have happened to

bring him in contact. The court will sweep aside questions of contractual privity and will found their decisions upon the basis of violated duty: Griffith v. Ingledew, 6 S. & R. 429; Harris v. Telegraph Co., 9 Phila. 88; Telegraph Co. v. Dryburg, 35 Pa. 298. The distinction between misfeasance and nonfeasance was also applied in Bank of Utica v. Smedes, 3 Cow. 662; Bank v. Broomhall, 38 Pa. 135.

2. If, therefore, the defendant bank simply allowed the draft to remain in its vault, and made no effort to present or collect the money deposited to meet it, the defendant is guilty of a misfeasance, for the consequences of which it is liable alike to privies and to strangers; if, on the other hand, the defendant, as is contended, forwarded the draft by mail to the Shackamaxon Bank, but sent no person to receive the proceeds, it is equally responsible for its tortious malpractice. The case is governed by Bank of Utica v. McKinster, 11 Wend. 473, affirming the decision, reported in 9 Wend. 46, holding that a bank is liable for its neglect in collecting negotiable paper, not only to those parties with whom it has direct or indirect relations, but to all who are beneficially concerned and who suffer damage. To the same effect are Bank of Washington v. Triplet, 1 Pet. 25; Ayrault v. Pacific Bank, 47 N. Y. 570; Chicopee Bank v. National Bank, 8 Wall. 641; Lawrence v. Stonington Bank, 6 Conn. 521.

3. By payment, the plaintiff became entitled to subrogation. Subrogation is purely an equitable result, and depends on facts to develop its necessity that justice may be done. Privity of contract is not essential. It is applicable wherever a payment is made, not by a mere volunteer, but under a fair and legitimate effort to protect the ascertained interest of the party paying and where intervening rights are not legally jeopardized or defeated: Cottrell's App., 23 Pa. 294; Mosier's App., 56 Pa. 76.

4. The fallacy of the ruling below was, that the plaintiff was treated throughout as absolutely discharged of the debt he owed for the sheep, by the negligence of the bank in failing to present the paper. What could discharge the plaintiff but payment? That he was under obligation to accept and pay, it is enough to refer to Riggs v. Lindsey, 7 Cranch 500.

*Mr. Charles E. Morgan, Jr.,* (with him *Mr. Francis D. Lewis* and *Mr. A. A. Hirst*), for the defendant in error:

1. There was no evidence showing any privity of contract, express or implied, between plaintiff and defendant, relative to the collection of the draft. The defendant was the agent, not of the plaintiff, but of the holder of the draft; and when it remitted the proceeds thereof to its principal on June 2, 1885, its entire duty with reference to the draft was discharged: Dodge v. Freedman's Saving & Trust Co., 93 U. S. 385; Montgomery Bank v. Albany City Bank, 22 Barb. 627.

2. The failure of the Girard Bank to collect the draft before the suspension of the Shackamaxon Bank, did not injure the plaintiff or inflict any loss upon him, because: (1) The draft was not accepted by the plaintiff in writing: act of May 10, 1881, P. L. 17.  (2) The plaintiff was freed from all responsibility on the draft by his deposit of the money to meet it and the opportunity thus afforded the defendant for its collection. The defendant's neglect, coupled with the loss of the deposit, was payment so far as the plaintiff was concerned: Morse, Banks and Banking, 280–2; Rickards v. Ridge, 2 Camp. 537; Cornell v. Lovett, 1 Hall 68. The cases cited upon the doctrine of subrogation, can have no bearing upon this suit, which is an action on the case to recover back money voluntarily paid with full knowledge of all the facts, upon an instrument which at the date of payment imposed no liability whatever.

OPINION, MR. JUSTICE PAXSON:

It was conceded that the defendant bank rendered itself liable to the holder of the draft in question by its delay in presenting it to the Shackamaxon Bank where it was made payable. It was received by the defendant on May 27, 1885. During that and the next day the Shackamaxon Bank paid all demands made upon it. Upon the 29th of May it suspended and closed its doors. The plaintiff had sufficient funds on deposit at the Shackamaxon Bank on May 27th and May 28th to have met the draft, and had left instructions with that bank to honor it when presented. Had it been presented and payment demanded on the 28th it would have been paid. Instead of sending it by messenger on that day the defendant bank sent it by mail. It was received by the Shackamaxon Bank

on the same day and was acknowledged as of the same date announcing its suspension. Both banks were located at the city of Philadelphia, distant about three miles from each other. The time required for a messenger between them did not exceed thirty minutes. It needs no argument to show that this presentation was not sufficient and rendered the defendant bank liable to the holder for neglect of duty. As was before observed, so much was conceded. This liability flows not only from the neglect of duty by said bank, but by virtue of the contractual relation between it and the holder. It was the agent of the latter for collection. This suit, however, was brought by the drawee, who claims to recover, not by reason of any contractual relation between himself and the collecting bank, for none exists, but by reason of the breach of duty on the part of the latter in not making proper presentation and demand for payment of the draft; it being alleged that the duty of a bank in this respect was of a public character, for the neglect of which any person injured thereby may have his remedy.

The particular injury in this case was the loss of the money deposited by the plaintiff in the Shackamaxon Bank to meet the draft, and which would have been so applied had proper presentation and demand been made. As a general rule the drawee of a draft cannot be said to be injured by a neglect to present it. The person damnified is the holder. But it is alleged there are circumstances in this case which take it out of the general rule.

We are in no doubt as to the facts. They are distinctly and clearly found by the learned judge below, who tried the case without the intervention of a jury. Thomas R. Alcorn, the drawer, was the agent of the plaintiff for the purchase of live stock. He bought a quantity of sheep at Buffalo, New York, and in payment therefor drew this draft on Thomas Harvey, his principal, and the plaintiff in this case. Alcorn had been purchasing agent of the plaintiff for years, and by authority of the latter had drawn upon him from time to time in payment of his purchases. This draft was drawn in the same manner and by the same authority. It may therefore be said to be substantially a draft drawn by the plaintiff upon himself. This was the position of the matter on June 1st, when the

draft was returned by the Shackamaxon Bank to the Girard Bank, defendant. On June 2d, the defendant bank sent the following letter to the plaintiff:

PHILADELPHIA, June 2, 1885.

THOMAS HARVEY, Esq.:

Dear Sir:—Thomas R. Alcorn's draft upon you for $799.22 was received through the Bank of North America of New York, on May 27th. Payment was refused. The Shackamaxon Bank returned to us, and received by us June 1st, on account of failure of the bank.

WHITEMAN, Cashier.

On the same day, June 2d, the plaintiff paid to the defendant bank, under protest, the amount due on the said draft, and took up and received the same. The plaintiff knew when he paid the draft that it had been received by the Girard Bank on the 27th of May, and that the Shackamaxon Bank did not close its doors until the 29th.

In any view we may take of the case, therefore, the plaintiff knew, or was chargeable with knowledge, on June 2d, that he was not liable on the draft, even had he accepted it in writing. If, under the peculiar circumstances of the case, we were to treat the draft as a check drawn by the plaintiff upon the Shackamaxon Bank, the failure of the latter after the time when by due course of commercial usage it ought to have been presented, relieved the plaintiff from all liability thereon. On the other hand, treating it as a draft, it is equally clear that no recovery could be had against him thereon. It was alleged, however, that if not liable upon the draft the plaintiff remained liable for the sheep which his agent had bought, and for the payment of which the draft was given; and that the payment was not voluntary, inasmuch as he paid under protest and for the purpose of protecting his credit.

We are unable to see the force of this proposition. In the first place the liability of the plaintiff to the holder of the draft for the price of the sheep is more than doubtful. The latter having received the draft, could not sue the plaintiff upon the original consideration until after acceptance or payment had been refused by the drawee. Neither occurred. It was his duty to collect the draft: he attempted to do so; the

plaintiff provided the money to meet it, and that money was lost through the negligence of the holder. I say the negligence of the holder, because the collecting bank was his agent, and its negligence was his negligence so far as the plaintiff is concerned. The holder had his remedy against his collecting agent for the negligence of the latter, but, as between the holder and the plaintiff, the latter was discharged both as to the draft and the consideration therefor, by the negligence of the former, resulting as it did to the prejudice and loss of the plaintiff. This is a familiar principle of commercial law: Chitty on Bills, 354. Even if we are mistaken in this, we do not see that it affects the case. The plaintiff paid his money upon the draft, qua draft, and not upon the debt or consideration which it represented, and he claims now to recover solely for a breach of duty by the defendant in relation to the draft. He paid as a volunteer, unless there be that in the fact of paying under protest and to protect his credit which will relieve him from that position. The plaintiff might well have stood upon his legal rights. He was not liable upon the draft, as before stated, and we incline to the opinion that he was not liable upon the consideration for which it was given. Was the payment under protest and to preserve his credit sufficient to convert a payment otherwise voluntary into an involuntary one? The protest was of no importance in a legal sense.

A voluntary payment of money under a claim of right cannot in general be recovered back. There must be compulsion, actual, present and potential, in inducing the payment by force of process available for instant seizure of person or property, when the party so paying must give notice of the illegality of the demand, and of his involuntary payment. The element of coercion being essential, a mere protest or notice will not change the character of the payment, or confer of itself a right of recovery: Peebles v. Pittsburg, 101 Pa. 304. However desirable to the plaintiff may have been the preservation of his credit, a voluntary payment for that purpose could not give him a standing as a party injured to sue for the negligence of the defendant bank. Nor is it by any means clear that he might not have preserved his credit in some other way. Had he allowed the draft to go back protested, with an explanatory letter, he would doubtless have preserved his credit, as well as

the remedy of the holder of the draft against the defendant bank for its negligence. As it stands, the holder has no remedy, because he has been paid. The plaintiff has no remedy, because he is a volunteer.

This view renders a discussion of the authorities cited unnecessary. They are not applicable. For the same reason we may disregard the claim to subrogation. The plaintiff is not in a position to demand it.

Judgment affirmed.