THE CLEARWATER (two cases).

THE BREAKWATER.

THE STILLWATER.

THE WANDERER (five cases).

NEW ORLEANS, B., R. M. & C. A. S. S. CO., Limited, v. LOUISIANA CONST. & IMP. CO.

(Circuit Court of Appeals, Fifth Circuit. May 26, 1896.)

Nos. 467, 468, 469, 470, and 471.

WHARFAGE—CONTRACT—LEASE OF WHARVES BY NEW ORLEANS.

By the terms of the contract between the city of New Orleans and the Northeastern Railroad Company, under which wharves were built by the company between Port and Montegut streets, there was reserved to the city the right to collect usual wharfage dues from vessels occupying such wharves, with the consent of the company, but not on its business: and this right passed to the Louisiana Construction & Improvement Com-

pany, under the ordinance by which the city farmed out to it all the revenues arising from the wharves existing in the First, Second, Third, and Fourth districts of the city, "from Toledano street to Piety street."

Appeals from the District Court of the United States for the Eastern District of Louisiana.

The five libels were filed by the Louisiana Construction & Improvement Company against vessels claimed by the New Orleans, Belize, Royal Mail & Central American Steamship Company, Limited, to recover wharfage dues alleged to have accrued to libelant, as lessee of wharves under the city of New Orleans. The district court rendered decrees against the vessels, and the claimant has appealed.

J. S. Zacharie, for appellant.

J. R. Beckwith, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and SPEER, District Judge.

PARDEE, Circuit Judge. The five libels in these wharfage cases are all in the same form, and propound causes of wharfage, charging that the defendant's vessels used wharves leased by the libelant, and for the use of which it is entitled to wharfage, at the established rate provided for in city ordinances, as shown in the exhibits filed with the libels. The answers admit that the libelant is the lessee of the public wharves, as set forth in exhibit filed with the libels, being a copy of the lease of the wharves and landings, but assert that, under the claimant's construction of that lease, it does not apply to or cover the wharves between Port and Montegut streets, where these vessels landed; deny the right of the libelant to collect wharfage between Port and Montegut streets under any circumstances; aver that the wharf between these streets was built by the Northeastern Railway Company, "and is a wharf at which vessels landing or mooring, by permission or license of said Northeastern Railroad Company, are free from any claims and demands in the nature of tolls or dues, on the part of the city of New Orleans, or any other person or corporation whatsoever, and especially the Louisiana Construction and Improvement Company"; aver that the claimant had the license and consent of the railroad company to moor at the wharf in question, and therefore is exempt from the wharfage demand set up in the libel; and admit that claimant has been for some years engaged, and is still "engaged, in the transportation of fruit and other cargoes of merchandise, between ports of Central America and the port of New Orleans." The record shows, by admissions and otherwise, that all of the vessels libeled landed at the wharf between Port and Montegut streets; that the wharf at that point was constructed by the Northeastern Railroad Company under a city ordinance; that, if any wharfage is due, the amount is correctly stated in the libels; and that the traffic in which the libeled vessels were engaged is general freight business, and not exclusively with or for the Northeastern Railroad Company.

An inspection of the contract between the city of New Orleans and the Louisiana Construction & Improvement Company, by which the revenues from the wharves were farmed out, and particularly of the second section of the ordinance recited in the contract, as follows:

"Sec. 2. Be it further ordained, etc., that the wharves and landings the revenues of which are to be sold under this ordinance shall comprise the wharves already constructed and existing in the First, Second, Third, and Fourth districts of the city of New Orleans, from Toledano street to Piety street, excepting therefrom all ferry and nuisance wharves, and all wharves or landings granted or leased to individuals and corporations which, by the terms of the grant or lease, are exempt from wharfage dues, until such time as said grants or leases may expire, after which time said lessees shall take charge of same under this ordinance, under similar conditions as other wharves. All [U. S.] United States government vessels shall be exempt from payment of wharfage dues."

—Shows that the city of New Orleans conveyed, and intended to convey, to the construction and improvement company, the right to collect and receive all the wharf dues within the limits mentioned which the city of New Orleans, under existing ordinances, had the right to collect and receive. No intention to reserve any wharf dues that the city had a right to collect can be inferred from any of the details of the contract which relate generally to the burdens assumed by the lessee.

By the contract between the city of New Orleans and the Northeastern Railroad Company, providing, among other things, for the construction of wharves between Port and Montegut streets, it was provided:

"No vessel shall occupy or lay at such wharves, discharge or receive cargo thereat, without the consent of said company, or its successors or assigns; and all vessels lying at or using said wharves by the consent of said company, and on the business of said company, shall be exempt from the payment of levee or wharf dues to the city of New Orleans. Said wharves and other structures shall be lighted and policed by the said company at its own expense. Any vessels lying at said wharves with the consent of said company, but not on its business, nor for the purpose of receiving or discharging freight or passengers to or from said company as a carrier, shall pay usual wharf dues to the city, provided that no privilege or grant concerning or referring to the wharves and levees herein granted shall go into effect until the consent and permission of the wharf lessees be had and obtained during the continuance of their lease."

As the vessels libeled in these cases occupied the wharves between Port and Montegut streets not on the business of the railroad company, nor for the purpose of receiving or discharging freight or passengers to and from said company as a carrier, it is clear that, under the provisions aforesaid, the ships libeled were liable to pay the usual wharf dues.

Being clear on these two propositions, it is useless to discuss the propositions only incidentally affecting the main issue, but considered in the briefs, and argued on the hearing. The decrees appealed from are affirmed.