(36 South. 918.)

No. 14,879.

NEW ORLEANS & N. E. R. CO. v. LOUIS-IANA CONST. & IMP. CO.*

(April 11, 1904.)

COSTS—TAXATION—DOCUMENTS USED.

1. On a rule to tax the costs, defendant objected to plaintiff's claim for copies of outward manifests of cargoes, also to claim for revenue stamps, on the ground that the manifests were irrelevant and were brought in evidence to prove an admitted fact, and, further, that they were not in form and the stamps were not needed.

2. Under the issues the testimony was relevant. It was admitted and used as testimony by both plaintiff and defendant.

3. The testimony heard on the trial of the rule shows that the amount of the items claimed is not excessive and illegal. The testimony was admitted and referred to by both parties. None of the objections now urged were urged on the trial of the case. The facts and law sustain the judgment of the district court.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by the New Orleans & Northeastern Railroad Company against the Louisiana Construction & Improvement Company. Action dismissed. From a rule compelling payment of costs taxed, plaintiff appeals. Affirmed.

Harry H. Hall, for appellant. J. R. Beckwith, for appellee.

BREAUX, C. J. Originally, in the suit bearing the above title, an exception of no cause of action was filed. The judge of the district court overruled the exception. From the judgment dismissing the suit, an appeal was brought up to this court.

The judgment of the district court was reversed on appeal, and the exception of no cause of action maintained, the action dismissed, and plaintiff condemned to pay costs. 33 South. 51.[1] The case was remanded, and a judgment entered in accordance with our decree. Subsequently to the rendition of this judgment plaintiff in rule presented its bill for costs. Plaintiff in the original suit, defendant in rule, refused to pay the costs. This rule was filed to compel their payment.

Plaintiff objected to some of the items of costs as set forth by plaintiff in rule.

---

*Rehearing denied June 29, 1904.

[1] 109 La. 13, 94 Am. St. Rep. 395.

The following is a list of costs to which defendant in rule objects:

Costs of certified copies of manifests of
vessels named in Exhibit Z........ $439 00
Costs of official manifest blanks for
above transcript, 2 cents each...... 30 14
United States revenue stamps, 10 cents
each, on certificate of transcript of
custom house and federal court..... 41 40

Total ....................... $510 54

Defendant in original case, plaintiff in rule, asked the court to tax the costs. This the court did, after having heard evidence, and condemned defendant in rule to pay the costs, of which the foregoing is a list.

The contention of the defendant in rule is that the facts shown by the above-mentioned manifests in bill of costs demanded by plaintiff in rule had been admitted by plaintiff in the original case; that, in consequence, the testimony was not necessary to the cause; and, besides, that these manifests are not copies of the record of public officers.

Copies of these manifests are part of the evidence in the former case, cited supra. They are "outward" manifests of cargoes, as distinguished from "entry" manifests of cargoes, of vessels entering this port. There is a large number of each of the outward and of the entry manifests, and they take up a large number of pages of the transcript.

No objection is urged by defendant in rule against the charge made by defendant against the New Orleans & Northeastern Railroad Company for the entry manifests. The contention is limited to the outward manifests, on the ground that the plaintiff had no concern in the outgoing cargoes, as they generally were shipped from other wharves than its own.

With reference to the entry manifests, it seems that they were manifests of cargoes of fruits destined for and sent over the New Orleans & Northeastern Railroad.

We restate: The contention of defendant in rule is that the entry manifest was all that was necessary to a determination of the case. The contention of plaintiff in rule, the Louisiana Construction Company, is that both the entry manifest and the outward manifest were necessary.

There is no special admission of record in regard to these manifests, nor in regard to cargoes that were outward cargoes, as to whether defendant in rule had or did not have any interest in them. Of course, if the cargoes were not shipped from the wharf of the New Orleans & Northeastern Railroad Company, it would have been absurd for it to claim a return of the wharf dues. It seems that some of the cargoes were shipped from that wharf, and that the plaintiff in rule conceived that the manifests were needful in making out a correct statement.

The case was tried on the merits in the district court.

Objection not having been urged to the manifests of the outgoing vessel, it is too late now to sustain the defense that they were not necessary in deciding the case. The following are our reasons for thus concluding:

Plaintiff in the first suit (109 La. 13, 33 South. 51, 94 Am. St. Rep. 395) annexed Exhibit Z, statement of the wharf dues, to and made it part of the petition. These included copies of manifests of outgoing and incoming cargoes, and plaintiff specially alleges in its petition that the vessels whose names were given in these statements or manifests had landed at its wharf and occupied none other in the city of New Orleans; and plaintiff asked for the return of amounts paid under protest, and averred that they were illegally exacted by reason of the fact that under the terms and stipulations of ordinance 7,483 they, the vessels and landing, were exempt from the payment of all wharf and levee dues.

Defendant's exception of no cause of action in the suit having been overruled, and as the trial was on the merits, defendant in the case judged proper to fix the amount by producing all the manifests in question.

We do not find that there was a complete admission of plaintiff, after its petition had been filed, that no return was expected of the amounts collected for account of outgoing vessels, or that no claim was laid to charges collected by the defendant construction company on the outgoing vessels.

The testimony quoted is not as conclusive upon the subject as plaintiff in the original case, or defendant in rule, argues. A witness for plaintiff said:

"With very few exceptions, all outward cargoes were forwarded by local merchants to Central American points, and to the best of my belief very little, if any at all, of these goods originally reached this city over the New Orleans & Northeastern Railroad."

The witness for plaintiff, the superintendent, from whose testimony we quote, recognized the fact that there were exceptions sufficient, we think, to justify defendant, under the circumstances, in introducing the copies of manifests, in order to minimize the extent of the exceptions.

Plaintiff's original brief in the first case, in which the costs are incurred, did not specially indicate that it was plaintiff's intention to limit its claim for return money to incoming vessels. On the contrary, the statement of the facts in the brief reiterates the allegations of the petition, which, as we take it, include both the incoming and outgoing cargoes as named in Exhibit Z, annexed to and forming part of the petition.

These papers were necessary to the cause, as we interpret the article, and to the defense in the original case, in the absence of any disclaimer by plaintiff in the original case of claim mentioned in the petition as due.

Moreover, a question arose about the construction of the city ordinance, and counsel introduced the evidence to sustain his view of the construction placed thereon by him.

Again, the testimony was offered and was admitted without the least objection on the part of counsel for the railroad company, plaintiff in the original case. Had he objected on the ground urged on the trial of this rule, we would feel justified in cutting down the bill of costs. Without objection, we do not think we would be.

In the second place, the defendant in rule takes the position that these manifests are not copies of the record of public officers, and therefore do not fall within the text of article 552, Code Prac., which lays down the following to be charged for as costs: "And other copies of the records of *other public officers* necessary in the cause." (Italics ours.)

Plaintiff's further supposition is that in the original case they (the copies of manifests) were not exact copies; that they were not positive and exact proof; that an examination of the asserted official copies "fails to disclose that these manifests are attested by any officer of the custom house."

True, the certificate attesting the verity of the copy is not attached to each manifest. We infer that this was not considered an objection, that there was some sort of certificate to each certificate, or that the usual certificates were considered supplied by other testimony. Both plaintiff and defendant used the copies of entry manifests without special certificates, and all these manifests, the "outward" and "entry," were referred to as properly before the court.

Counsel for defendant, Mr. Beckwith, testified in regard to the manifests, as follows, viz.:

"I applied for copies of the custom house records, being made under the oath of the parties; therefore the best evidence. I applied to the custom house for permission for an agent or clerk to examine the records and take abstracts from the manifests, in order to ascertain the goods, shippers, and consignees. I was met, as I expected to be met, by a statement that the records of the customhouse were confidential, and they would allow no one, not an official, in the record room, nor would they allow any transcripts to be taken until they were satisfied it was not out of idle curiosity. The manifests were voluminous, and, after considerable negotiation with Mr. Fluker, who was deputy collector, and considering the immense volume of the work, I finally reached an agreement that if the records were copied by designated officials on the official blanks, which sav-

ed a great deal of copying in itself, that they would furnish me the manifests at a dollar apiece, which was much less, a great deal, than ten cents a folio would have been; Mr. Fluker agreeing to certify them. It was the most advantageous arrangement that I could make, much cheaper, in fact, than I expected to be able to get them. Under that arrangement, the manifests were furnished and used here in court, and so voluminous were they that I had to hire a porter to carry them here and to the Supreme Court. They came to me certified, requiring the war revenue stamp. There is a severe penalty for using any such document without the ten-cent stamp, and I did not think it was right to encourage or commit any violation of law; besides, as I understand the revenue law, they would not be competent evidence without it.

"That item is what is stated in the bill here for the manifests, a dollar apiece for vessels named in Exhibit Z, on the several voyages they made, and the two cents for the blanks, some of them requiring several blank sheets, according to the character of the cargo they had; and the bill is correctly stated, of my own knowledge."

We have inserted the foregoing because it has important bearing upon the issues, with reference to the objection that these copies were not records of "other public officers" mentioned in Code Prac. art. 552.

These copies were furnished by the custom house officers under their direction. They came to counsel certified. If they were certified, as we infer, by the deputy collector of the port, they were properly certified, and that officer had authority to issue them and certify to their correctness. They are records of other public officers necessary in the cause.

The officer in charge of the record, who is their custodian, is vested with authority to certify as to their correctness. They were exemplified copies by an officer having the authority to issue them. This officer can issue exemplified copies. No question was raised, when they were offered, on ground now urged. "The copy is properly certified by the officer having the custody of the original." Boatner v. Scott, 1 Rob. 546; Succession of Wedderburn, 1 Rob. 266.

We take up the objection that the copies, although offered in evidence and admitted, do not appear to have been filed.

The laches of the clerk in not having filed the document offered and admitted is not to be taken to the prejudice of the party to the suit by whom they were offered. The want of the mere filing is not ground not to pay for the testimony after it had been used, as in this case. It would be ground to urge against any claim of the clerk for filing, not of others who are not responsible for his slighting his work.

The testimony of counsel, which we have inserted above, is not questioned by other testimony as to the value of the work done. If it appeared by testimony that there is an overcharge, we would hastily strike it out; but it does not so appear.

We presume that these fees are regulated by law. They certainly should be. There is nothing showing that the officers exceeded the tariff of charges for such copies. Until an overcharge is made manifest, we will not charge any one with attempting to do that which a conscientious officer will always seek to avoid.

The stamps used were required, and therefore were properly charged.

For reasons assigned, the judgment appealed from is affirmed.