162 So. 649

**STOREY v. STANTON.**

No. 32891.

July 1, 1935.

Geo. Wesley Smith, of Monroe, for appellant.

Young & Watson, of St. Joseph, for appellee.

ROGERS, Justice.

Alleging that he was a tenant on defendant's plantation during the years 1930, 1931, and 1932, plaintiff sued for a settlement of accounts and for the recovery of $2,265.61 as the alleged balance due. Plaintiff also asked for the annulment of a chattel mortgage which he executed in defendant's favor on November 28, 1932, on the ground that the instrument was executed under duress and on defendant's promise to make a complete settlement of their affairs, which defendant had failed to do. Defendant, answering the suit, denied that he was indebted to plaintiff, and averred that in the fall of 1932 a complete settlement had been made between them covering their transactions for the years 1930, 1931, and 1932. Defendant alleged that in negotiating the settlement, it was ascertained that plaintiff owed defendant an amount in excess of the sum for which the chattel mortgage was granted, but defendant voluntarily remitted a material part of the indebtedness and agreed to accept in full settlement of plaintiff's indebtedness his notes for $325, secured by the chattel mortgage referred to in the petition. Defendant denied plaintiff's allegations of fraud and duress. Defendant prayed that plaintiff's demand be rejected and in reconvention for judgment for certain sums

alleged to be due him by plaintiff. Subsequently, defendant filed a plea of estoppel predicated on the alleged final settlement of accounts, and on the acknowledgment by plaintiff in the chattel mortgage act that under the settlement a balance was due defendant, to secure which the chattel mortgage was granted. And defendant pleaded that plaintiff was estopped to offer any evidence as to their transactions prior to the execution of the chattel mortgage until plaintiff had first established that the settlement, the acknowledgment of indebtedness, and the chattel mortgage securing the indebtedness were obtained through fraud or coercion.

After the trial on its merits, the plea of estoppel was sustained and plaintiff's demand rejected. Plaintiff has appealed from the judgment.

■ In acknowledgment of his indebtedness of $325 to defendant, the plaintiff on November 28, 1932, signed and indorsed two promissory notes for the sum of $162.-50 each, with interest and attorney's fees. The notes were secured by a chattel mortgage bearing the same date. One of the notes was made payable on November 1, 1933, and the other note was made payable on November 1, 1934. This suit was filed on October 24, 1933, which was about eleven months after the chattel mortgage was executed and about a week before the first chattel mortgage note became due.

. Our examination of the record has satisfied us that the judgment of the district court is correct. The defendant, J. M. Stanton, is engaged in the ginning, planting, and mercantile business in the parish of Tensas. He is also the owner of the Thistle Ridge Plantation situated in that parish. The plaintiff, C. M. Corey, leased from Stanton 100 acres of his plantation for agricultural purposes during the years 1928, 1929, 1930, 1931, and 1932. Corey lived on the leased property, which he operated partly in person and partly through various tenants, who worked for him on shares. Stanton furnished money and supplies to Corey and his tenants, and the cotton raised by them was ginned at the gin operated by Stanton on the plantation. There was a settlement of accounts between the parties each year, and where there was a balance due Corey it was paid by Stanton. During the years 1930, 1931, and 1932, Storey lost money on his farming operations. In the settlements had between the parties for those years the balances were in Stanton's favor. At the end of the year 1932, Stanton advised Storey that he was willing to renew the lease and carry him personally, but he was unwilling to continue to carry the subtenants. Stanton also told Corey that if he wished to move it would be satisfactory to him. A few days later Corey informed Stanton that he had secured another place and would move. Later Corey, accompanied by his son-in-law, called on Stanton to arrange for a settlement of their accounts. The record leaves no room for doubt that at that time Corey was indebted to Stanton. In fact,

Corey, on cross-examination, admitted that such was the case. On pages 45 and 46 of the transcript appears the following question addressed to Corey and his answer thereto, viz.: "Q. Was the matter of the balance you owed discussed? A. Yes, he (Stanton) said I owed him about $600.00, and I told him he had not given me credit for everything; that it could not be that much, and then he agreed to cut it down some." And the record also leaves no room for doubt that the parties finally agreed to fix Corey's indebtedness to Stanton at $325, to be represented by two notes of Corey for $162.50 each, secured by chattel mortgage.

The testimony shows that the discussion at Mr. Stanton's residence occupied several hours, during which there were books and papers before the parties containing the accounts. After the settlement was agreed upon, Stanton suggested that Corey should go home and discuss the settlement with his wife, and if they decided to execute the chattel mortgage, securing the balance due him, that Corey and his wife should come to Stanton's residence the following day, and he would drive them to the parish seat to complete the transaction. The next day Corey and his wife called at Stanton's residence, reaffirmed the settlement reached between the parties, and accompanied Stanton to the parish seat, where the notes were signed and chattel mortgage executed without objection; Corey's only inquiry being as to whether the waiver of the homestead right might affect

certain other debts due by him. No intimation was given Stanton that Corey was dissatisfied with the settlement until shortly before the first chattel mortgage note was about to mature, which was nearly a year after the settlement had been effected, when he received a letter from Corey's lawyer, informing him of Corey's claim.

Corey admitted in his testimony that he was not personally afraid of Stanton, and the only fraud he claims was practiced upon him consisted of Stanton's alleged statement that unless he received security for the indebtedness due him he would cause a seizure to be levied on his debtor's property. Stanton denied that he had made any such statement. He testified that he knew he could not seize Corey's property, because of the homestead exemption, and that Corey knew of the exemption. He further testified that the only thing he told Corey was that if they were unable to reach an amicable settlement, he would exercise his legal rights in an effort to collect the amount due him.

Generally speaking, when consent is obtained to a contract by threats, the contract may be annulled; but if the threats be "only of doing that which the party using them had a right to do," they are not cause for annulling it. Patorno v. Vacaro, 153 La. 364, 95 So. 864.

It is not duress to institute or threaten to institute civil suits, or take proceedings in court, or for a person to declare he intends to use the courts wherein to insist

upon what he believes to be his legal rights. New Orleans & N. E. R. Co. v. Louisiana Const. & Imp. Co., 109 La. 13, 33 So. 51, 94, Am. St. Rep. 395.

For the reasons assigned, the judgment herein appealed from is affirmed, at the appellant's costs.