157 So.2d 308 (1963)
GREAT AMERICAN INDEMNITY COMPANY, Plaintiff-Appellant,
v.
Earline Mayeaux DAUZAT, Barry W. Dauzat and Donald M. Garrett, Defendants-Appellees.
No. 922.
Court of Appeal of Louisiana, Third Circuit.
October 30, 1963.
Stafford & Pitts, by Grove Stafford, Jr., Alexandria, for plaintiff-appellant.
Donald M. Garrett, Alexandria, for defendant-appellee.
Gravel, Sheffield & Fuhrer, by Camille F. Gravel, Jr., Alexandria, for defendant-appellee.
Before TATE, SAVOY and CULPEPPER, JJ.
SAVOY, Judge.
This appeal arises from the following sequence of events:
(a) Earline Mayeaux Dauzat, in a suit other than the one here involved, recovered a judgment against the Great American Indemnity Company for the wrongful death of her father;
(b) She then took a devolutive appeal therefrom, La.App., 130 So.2d 805;
(c) Upon demand of her attorney, Great American Indemnity Company paid the amount provided by the judgment, its draft *309 being accompanied by a letter reserving the right either to appeal or to answer Mrs. Dauzat's appeal;
(d) Great American Indemnity Company answered the appeal, asking for a reduction in the amount awarded;
(e) When plaintiff's appeal was heard, the amount of the judgment was reduced by $1,017.50;
(f) In a separate suit, the one here appealed, Great American Indemnity Company sued Earline Mayeaux Dauzat and her husband, Barry W. Dauzat, in solido, for recovery of the excess previously paid, and, in the same suit, sought to recover from Donald M. Garrett, attorney for Earline Mayeaux Dauzat in the first mentioned suit, one-third of the said excess.
The petition of great American Indemnity Company alleges that Mrs. Dauzat is indebted to it for the over payment as such; that Mr. Dauzat is indebted in solido with her for the reason that all of the money initially paid was spent for the enrichment of the community of acquets and gains existing between himself and Mrs. Dauzat; that Donald M. Garrett is indebted to it for one-third of the excess paid for the reasons that he was included as a named payee on the initial draft, that he endorsed the draft along with Mrs. Dauzat and that he received as his fee one-third of the total amount received by Mrs. Dauzat. Plaintiff's petition alleges further that when it sent its draft to Mr. Garrett, it was accompanied by a letter advising that the payment was made in response to demand and that it reserved the right to appeal or to answer Mrs. Dauzat's appeal; and that it had, in fact, answered the appeal taken by her, resulting in the reduction of the judgment.
Mrs. Earline Mayeaux Dauzat did not plead to plaintiff's suit, and a default judgment was entered and confirmed against her for the full amount of the excess.
Defendants, Barry W. Dauzat and Donald M. Garrett, filed exceptions of no cause or right of action, and, in addition, Donald M. Garrett filed an exception of improper cumulation of actions.
The exceptions of no right or cause of action were tried and sustained by the lower court dismissing plaintiff's suit as against defendants Garrett and Barry W. Dauzat, from which judgment plaintiff has brought this appeal.
The crux of plaintiff insurance company's contentions is that it paid more than was subsequently declared to be due, and that, as a result, defendants had been unjustly enriched thereby. Defendants contend that they were not parties to the original suit, and that plaintiff's remedy should be confined to the judgment obtained against Mrs. Dauzat.
In this case, both plaintiff and defendants dwell heavily on a discussion of Article 2301 et seq. of our LSA-Civil Code, and whether or not, under the circumstances of this case, plaintiff made the payment through error as contemplated by the Code. The articles provide as follows:
"Art. 2301. He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it."
"Art. 2302. He who has paid through mistake, believing himself a debtor, may reclaim what he has paid."
"Art. 2303. To acquire this right, it is necessary that the thing paid be not due in any manner, either civilly or naturally. A natural obligation to pay will be sufficient to prevent the recovery."
"Art. 2304. A thing not due is that which is paid on the supposition of an obligation which did not exist, or from which a person has been released."
We have examined the cases cited in the briefs filed herein and find them inapplicable for the reasons that they deal only with *310 immediate, rather than with subsequent, payees, or, with payments made with full knowledge of the facts leading to the payor's ultimate loss.
Our own research reveals no Louisiana cases directly applicable to the issues here involved. During the course of his argument in this Court, counsel for plaintiff cited the case of Crane v. Runey, 9 Cir., 26 F. 15; however, that case is distinguishable from the case at bar for the reason that in the Crane case, supra, the court allowed money to be recovered on an erroneous judgment from a party thereto, where as in the instant case, the parties resisting the action are third parties, namely, the husband and the attorney for Mrs. Mayeaux Dauzat.
LSA-Civil Code, Article 2301 et seq. are expressed in terms of the immediate payee only and their mere reading does not supply the answers when applied to third parties such as the defendants herein.
We have, therefore, turned to Planiol, Traite' Élémentaire de Droit Civil. It is to be noted, from Concordance Table 1, Volume 1, Part 1, Planiol, that the French counterparts to LSA-Civil Code, Article 2301 et seq. are discussed in Volume 2, No. 835, et seq. of Planiol, appropriate sections of which are quoted, in part, as follows:
"835. Definition
"Every payment presupposes a debt (supra, No. 400). Consequently, if a thing has been paid without it being legally due, it can be recovered. The action provided for this purpose is called the action in repetition of the thing not due; * * *.
"Section 1. CASES WHERE REPETITION IS POSSIBLE
"837. Division
"Repetition always presupposes that what was paid was not due, but in order to determine precisely the conditions under which repetition can be exercised, it is necessary to distinguish between three different situations: (1) where there was no obligation whatever between the payor and the payee; (2) where the payment was made in view of an actual obligation which has since ceased to exist; and (3) where the obligation paid had an illicit or an immoral cause.
* * * * * *
"B. CASES OF DISAPPEARANCE OR A NONREALIZATION OF THE DEBT
"842. Case Envisaged
"This is the case the Romans knew as the condictio sine causa or the condictio causa data causa non secuta. It arises when the debt, existent at the moment the payment is made, is later rescinded or annulled, or when the traditional or eventual debt in view of which the payment is made, never arises. * * *
"843. Conditions for the Action
"It is required that there be something not due: the plaintiff in repetition must prove that his debt was resolved or annulled, or that the future debt did not arise; but the condition of error is not required, and it cannot be exacted. There is an act other than payment, and that is the annulment, the resolution or failure of a condition, which renders necessary the re-establishment of things in the state they would have been in if the agreement had not been made.
"Section 2. OBJECT OF THE RESTITUTION
"A. Payment Made in Money
"847. Restitution of the Principal
"If the thing paid was money or some other fungible thing, he who received it is obliged to return the same sum, or the same quantity of things of the *311 same quality. The receipt of a thing not due produces in this respect the same effect as the payment in the case of a loan: like the Roman `mutuum,' it makes the recipient the owner, under the obligation of restoring the equivalent.
* * * * * *
"B. DELIVERY OF CORPOREALS
"849. Restitution of the Thing
"If that which was paid was a corporeal movable or immovable, what was received should be restored in kind (Art. 1379).
* * * * * *
"853. Case Where Thing has been Alienated
"The law foresees the case where the recipient of a thing not due has alienated it before being sued in repetition. If he acted in good faith, the law obliges him to restore only the price which he received (Art. 1380). * * *
"854. Revindication Against Third Parties
"The Civil Code, in conformity with tradition represented by the Roman texts and by Pothier, only regulates the relationship between the two parties involved in the payment. It considers the payment of the thing not due as giving birth only to a personal action in restitution, which is necessarily directed against the recipient. It did not consider the relations between the person paying and third parties acquiring the thing. All the authors admit that the payment is not effective when it is not due because it is without cause, * * *. They therefore admit that the person making the payment has an action in revindication against third parties to whom the thing was transferred, save in the case * * * good faith purchasers * * *."
It is to be noted from No. 843 of Planiol, supra, that payment in error is not made a prerequisite to recovery in the case where the debt has been subsequently extinguished. Thus, in the instant case, it matters not under what condition the plaintiff insurance company's payment was made.
Further examination of Planiol (Nos. 842, et seq., supra) shows that he makes a distinction between payments made in money and delivery of corporeal movables. It is only with respect to corporeals (in the usual sense of the term) that Planiol treats the revindication against third parties.
We, therefore, conclude that in cases such as the one here appealed, in which the party receiving the money payment has disposed of it, in good faith at the time of disposal, the payor may not follow it into the hands of third parties.
The common law viewpoint generally is expressed in 5 Am.Jur.2d, Appeal and Error, Sections 997 and 999:
"Section 997. In general.
"A judgment rendered by a court having jurisdiction of the parties and the subject matter protects the parties acting under it before reversal or stay, and constitutes a sufficient justification for all acts done in its enforcement before it is reversed or set aside by competent authority. Acts done under such a judgment cannot be made the basis of an action for damages for tort. However, all proceedings taken under the judgment are dependent for their validity on the judgment being sustainedwhen it is reversed or set aside, the party to the record who has received the benefit thereof must make restitution to the other party of money or property received under it. (Italics ours).
* * * * * *
"Section 999. Parties entitled to or liable for restitution.

*312 "The right to or liability for restitution is ordinarily restricted to the parties to the record. * * *"
Accordingly, the judgment of the lower court is affirmed; all costs of this appeal to be borne by plaintiff-appellant.
Affirmed.