217 So.2d 707 (1968)
WHITEHALL OIL COMPANY, Inc., Plaintiff and Appellant,
v.
Mrs. Marie Celeste Delaureal BOAGNI et al., Defendants and Appellees.
No. 2454.
Court of Appeal of Louisiana, Third Circuit.
December 5, 1968.
Rehearing Denied January 10, 1969.
Writ Granted March 13, 1969.
*708 Chaffe, McCall, Phillips, Burke, Toler & Hopkins, by C. Manly Horton, Jr. and Charles Richard, Jr., New Orleans, for plaintiff-appellant.
Kantrow, Spaht, Weaver & Walter, by Carlos G. Spaht, Baton Rouge, Voorhies, Labbe, Fontenot, Leonard & McGlasson, by David S. Foster, Lafayette, Charles F. Boagni, III, Morgan J. Goudeau, III, Andrus & Pavy, by Alex L. Andrus, Jr., Opelousas, for defendants-appellees.
Before TATE, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
This case is consolidated for trial and appeal with Whitehall Oil Company, Inc. v. Heard et al., 217 So.2d 717, in which a separate decision is being rendered by us this date. The plaintiff seeks to recover from the defendants certain overpayments of gas royalties not due under the respective leases. From an adverse judgment in both cases, the plaintiff has appealed.
There is no dispute as to the facts. They are set forth in a joint stipulation by the parties. The defendants are lessors in two oil, gas and mineral leases covering certain lands in St. Landry Parish, Louisiana. The lease in the present case is dated December 13, 1959 and the one in the companion case December 7, 1959. There is also an assignment of overriding royalty, pertaining to the lease of December 1, 1959, to certain of the defendants. These leases were acquired by plaintiff by assignment on April 4, 1960.
On September 13, 1961, the Federal Power Commission granted plaintiff temporary authority to sell the gas produced from the two leases at a price of 23.25¢ per m.c.f. However, this temporary authority was conditioned on plaintiff's agreement to restore to the pipeline purchasers any difference between the price temporarily authorized and the price finally approved by the Federal Power Commission.
On July 23, 1964, the Federal Power Commission established the final authorized price at 20¢ per m.c.f. pursuant to the terms of the temporary authority, plaintiff then refunded to the pipeline purchasers the difference between the price temporarily authorized and the final price established.
Plaintiff actually paid royalties to the defendants, based on the temporary price of 23.25¢ per m.c.f., until the final price of 20¢ was established on July 23, 1964. However, the joint stipulation of the parties states: "The defendants were not notified in any way prior to July 23, 1964, that they could be subjected to a retroactive demand for excess royalty payments in the event the gas sales price was reduced." Early in 1965 plaintiff demanded reimbursement from the royalty owners for their respective portions of the overpayments which plaintiff had refunded to the *709 pipeline purchasers. Defendants refused and this suit followed.[1]
Plaintiff argues first that under the very language of the two leases, and the overriding royalty assignment, the defendants are entitled only to their proportionate parts of the amount "realized" by the plaintiff from the sale of the gas.[2] And, since it finally realized only 20¢ per m.c.f., there was an overpayment of royalty not due which must be refunded. Plaintiff relies on the general equitable principles of unjust enrichment, LSA-C.C. Articles 21 and 1965, and particularly the articles of our Civil Code dealing with "Payment Of A Thing Not Due".[3]
These latter articles are found in Title V, Chapter I of our Civil Code entitled "Of Quasi Contracts". The rationale of the articles is that, even without an express agreement to that effect, every payment presupposes a debt. Consequently, if a thing has been paid without it being due, it can be recovered.[4]
In construing these articles, the first question is the requirement of error. Article 2301 provides that, as to the person who receives the payment, it is immaterial whether he had knowledge the payment was made through error. In the present case, the defendants had no knowledge whatever that the alleged overpayments were made subject to a condition that they might have to refund them. In any event, this is immaterial, for even if they had known the payments were not due, this would not affect their obligation to refund them.
Article 2302 states that "he who has paid through mistake, believing himself a debtor, *710 may reclaim what he has paid." Thus, our Civil Code allows recovery of payment through error of a thing not due.[5] In the present case, the alleged overpayments were not made through error on the part of the plaintiff. It knew that under the terms of the leases it was obligated to pay royalty on the basis of the price for which it sold the gas to the pipeline purchasers. The lease provisions to this effect are clear and were so understood by the plaintiff. At the time these payments were made, they were actually due. Hence, there can be no contention that they were paid through error.
Since the payer was not in error, defendants make a strong argument that the above quoted codal articles, regarding payment of a thing not due, can have no application. However, this is not the end of our inquiry of the statutory materials. In discussing "repetition", the French action to recover payment of a thing not due, Planiol, Civil Law Treatise, an English Translation by the Louisiana State Law Institute, Vol. 2, Part I, pg. 449, Sec. 837 states:
"Repetition always presupposes that what was paid was not due, but in order to determine precisely the conditions under which repetition can be exercised, it is necessary to distinguish between three different situations: (1) where there was no obligation whatever between the payer and the payee; (2) where the payment was made in view of an actual obligation which has since ceased to exist; and (3) where the obligation paid had an illicit or an immoral cause."
Planiol takes the position that error by the payer is required in situation (1) listed above, but not in situations (2) and (3). The present case falls within situation (2), of which Planiol says in Vol. 2, Part I, pg. 452, Sec. 843:
"It is required that there be something not due: the plaintiff in repetition must prove that his debt was resolved or annulled, or that the future debt did not arise; but the condition of error is not required, and it cannot be exacted. There is an act other than payment, and that is the annulment, the resolution or failure of a condition, which renders necessary the re-establishment of things in the state they would have been in if the agreement had not been made." (Emphasis added)
We note that Planiol's discussion concerns Code Napoleon Article 1376, which is almost identical to our own LSA-C.C. Article 2301. These two articles do not attempt a further definition of "a thing not due", nor do they expressly provide for recovery of a payment made through error. Our own Louisiana Civil Code has added Articles 2302 through 2309, which have no corresponding source articles in the Code Napoleon. The purpose of these additional articles is to expressly allow recovery where there is error on the part of the person making the payment and to further define "a thing not due".
LSA-C.C. Article 2304 is particularly applicable to the present situation. It provides that "a thing not due is that which is paid on the supposition of an obligation which did not exist, or from which a person has been released." The first part of the article pertains to the situation where a person pays through error a debt which actually does not exist at the time of the payment. (This is in effect the same as Article 2302.) However, the latter part of the article applies to the situation where an actual obligation exists at the time of the payment, but the debt is later released. Although Article 2304 does not expressly stated that in this latter situation error on the part of the payer is not required, we think this is necessarily implied. For, if there is an actual legal obligation at *711 the time of the payment, it cannot be made through mistake. As Planiol says, in Vol. 2, Part I, Sec. 843, quoted above, there is an act which takes the place of the payment through error, and that is the subsequent resolution or failure of the contract. Under our Code, this would be a resolutory condition.[6]
From the statutory materials, it is our conclusion that in the present case, error on the part of the plaintiff at the time of the payment is not required. Plaintiff need only show that subsequent to the payment the debt was released by the occurrence of a resolutory condition. The Code, Article 2304, provides no further limitation or condition. However, our courts have applied equitable considerations in many cases for recovery of payment of a debt not due.
For instance, the courts have considered the following equity factors in suits to recover payment of a thing not due: (1) Was the payer guilty of fault such as fraud or duress, or of negligence in failing to protect his own interests or in failing to treat fairly the interests of the payee, Pennsylvania Casualty Co. v. Brooks, La.App., 24 So.2d 262; Metropolitan Life Ins. Co. v. Mundy, La.App., 167 So. 894; New Orleans & N.E.R.R. Co. v. La. Construction & Improvement Co., 109 La. 13, 33 So. 51; Rivers v. New Orleans Waterworks Co., 35 La.Ann. 822; Ducros v. Missouri State Life Ins. Co., Orl.App. No. 7996. (2) Would recovery result in injury to the party to whom the payment was made, Continental Oil Co. v. Jones, La.App., 191 So.2d 895; Central Surety & Ins. Corp. v. Corbello, La.App., 74 So.2d 341. (3) Would the party who made the payment receive some benefit from the payment by error, Morse v. Oates, 11 La.App. 462, 123 So. 439.
Jurisprudence in common law jurisdictions has developed many other equitable factors to be considered in a suit for recovery of payment of a debt not due. Some of these mentioned in 40 Am.Jur. 820-872, Verbo Payments, Secs. 155 through 235 are: (1) was the payment made under business duress (Sec. 171), i.e., was it necessary to make the payment to preserve the payer's property or protect his business interests; (2) was the payment made under protest (Sec. 180, et seq.); (3) did the payer have another remedy in lieu of payment (Sec. 183); (4) was the payment induced by fraud (Sec. 185); (5) was there mutuality of mistake (Sec. 191); (6) has the payment caused such a change in the position of the payee that it would be unjust to require him to refund (Sec. 201). We see no reason why equity factors, such as the ones developed in common law jurisdictions, should not be applied where appropriate by the courts of Louisiana. Actually many have been discussed and some applied. For instance, the concept of business duress was discussed in New Orleans & N.E. R.R. Co. v. La. Construction & Improvement Co., 209 La. 13, 33 So. 51, but the court found under the facts of that case that it should not apply. However, the decision of the court shows the extent to which equitable considerations are taken into account. The court said:
"The question narrows to what is in law a voluntary payment. The distinction to be made between payments voluntary and payments under duress has been a fruitful theme of discussion in the courts. Where the parties were not on equal terms; where the payer had no choice; where the only alternative was to submit to an illegal exaction or discontinue businessthese and other like circumstances evidencing pressure or duress under which money or other value is parted with have never been regarded as embraced within the rule of voluntary acts within the meaning of the *712 maxim `Volenti non fit injuria.' Swift Co. v. U.S., 111 U.S. [22] 28, 4 Sup. Ct. 244, 28 L.Ed. 341. But where dispute arises and the debtor, who pays under protest, has at hand other means of immediate relief than by making the payment, his act is not one done under coercion and his protest does not take the case out of the category of voluntary payment."
Now let us examine the facts of the present case to determine where the equity lies. Plaintiff contends the payments were made under "business duress".[7] The argument here is that, in order to protect its leases, plaintiff had to make the overpayment of royalty based on the price fixed by the Federal Power Commission. Hence, that the payments were made under business duress and the defendants should not be allowed by equity or good conscience to retain them. This is a persuasive argument. Plaintiff could charge no more than the price authorized by the Federal Power Commission and, in order to protect its leases, it had to pay royalty on the basis of this price. In seeking the highest possible price plaintiff was attempting to protect not only its own but the payee's interests. There was no way for plaintiff to determine in advance whether the final price authorized would be lower. In the interim, it paid the full royalty to defendants who had the use of the money. Hence, up to this point, the equity seems to favor the plaintiff.
Defendants' principal argument is that plaintiff should have notified them that the overpayment of royalties might have to be refunded. Defendants say that the plaintiff could have sought an agreement, whereby the excess royalty could have been placed in escrow until the final authorized price was determined by the Federal Power Commission; or that plaintiff could have sought to obtain from defendants an amendment of the lease; or at least that plaintiffs could have filed a suit for declaratory judgment to determine their rights under the leases. Defendants contend that by not pursuing one of these alternatives, the plaintiff has been guilty of negligence in the protection of its own interest and has failed to mitigate its losses. Of course, defendants also argue that they were misled into using the funds for a period of three years and now it would cause them injury if they had to make restitution.
It is our conclusion, after considering all of the facts, that the equities favor the plaintiff. The only substantial equitable argument against its position is that it failed to notify the defendants in some way, either through an attempted escrow agreement, a suit for declaratory judgment, payment under protest or by some other means that part of the royalty payments might have to be refunded. However, this lack of notice to the defendants is offset to some extent by the fact that the overpayments received are not large sums[8] and the defendants have failed to show their circumstances are such that they will be injured by the return of these overpayments which were not due.
The plaintiffs pray for refund of both the principal and interest which it had to pay to the pipeline purchasers under its agreement. We find no case which considers the question of interest on recovery of a payment not due. However, under the facts of this case, we think interest should be denied.
*713 The defendants also argue that under LSA-C.C. Art. 2671 the rent due under a lease must be "certain and determinative". They argue that if a refund of the rent (in this case the royalties) is required, the price would then be uncertain and the lease violated. The answer to this argument is that the present action is based on a quasi contractual obligation authorized by our Civil Code as discussed hereinabove.
The arguments made by defendants under the heading of "estoppel" in their brief, are substantially the same as those discussed above in considering the equities of the case.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of Whitehall Oil Company, Inc. against Mrs. Marie Celeste Delaureal Boagni in the amount of $1752.91; against Mrs. Gladys Mae Pitre Boagni in the amount of $536.44; against Mrs. Gladys Boagni Waterbury in the amount of $152.27; against Christopher Dietlein Boagni in the amount of $274.72; against Vincent Boagni, Jr. in the amount of $1727.28; against Edward M. Boagni, III in the amount of $1752.88, and against the following, in the proportions stated for each, out of the sum of $1883.67 formerly held in the registry of the court in proceedings numbered 44352 on the docket of the Twenty-seventh Judicial District Court for the Parish of St. Landry:

Marie Celeste D. Boagni 33.333%
Edward M. Boagni, III 33.333%
Gladys M. Pitre Boagni 22.200%
Vincent D. Boagni, Jr. 7.423%
Christopher D. Boagni 3.711%

It is further ordered that the defendants pay legal interest from the date of judicial demand until paid, together with all costs in the district court and in this court of appeal.
Reversed and rendered.
TATE, Judge (dissenting).
The writer respectfully dissents.
From 1961 to 1964 the plaintiff Whitehall unconditionally paid royalties to the defendant landowners. In 1965, Whitehall informed them that the payments so made unconditionally had, in reality, been made subject to a resolutory condition. Whitehall stated that the landowners owed them refunds (of about 1/8 of the royalties previously paid) because Whitehall had been forced to reimburse such amounts to the purchaser of the mineral products, pursuant to a side-agreement between it and the purchaser (which provided for a temporary price pending a final Federal Power Commission ruling with reimbursement to be pursuant to the final price approved by the F.P.C.) It is conceded that the defendant landowners were totally ignorant of this agreement, and that Whitehall had never informed them of it nor that the royalties unconditionally paid during these three years were subject to refund upon later claim.
In its scholarly opinion, the majority concedes that the general rule is to the effect that payments voluntarily made with full knowledge of the facts cannot subsequently be recovered; that it is only payments made through error which can as a general rule be subsequently recovered. However, the majority suggests that Civil Code Article 2304[1] permits, as an exception, the recovery of payments voluntarily made subject to a resolutory condition. In the writer's opinion, for the reasons to be set forth more fully below, this is neither the express nor the implied meaning of the article.
The exception sought to be applied here does violence to the general legal principle *714 that, for the stability of society and of transactions, voluntary payments made with full knowledge of all the facts and not under duress may not subsequently be recovered, even though the amount so paid is not actually owed. New Orleans & N. E.R. Co. v. Louisiana Construction & Imp. Co., 109 La. 13, 33 So. 51 (1902); Fuselier v. St. Landry Parish, 107 La. 221, 31 So. 678; Rivers v. New Orleans Water Works Company, 35 La.Ann. 822; Hicks v. Levett, 2d Cir., 19 La.App. 836, 140 So. 276; Ducros v. Missouri State Life Ins. Co., 4 Peltier's Orleans Appeals 463 (Orl. No. 7996). See also Strange v. Continental Supply Co., 165 La.Ann. 20, 115 So. 353.
Similar rules are applied by the common law also. See 70 C.J.S. Payment §§ 133-144. This ancient and universal legal principle is expressed by the maxim, "Volenti non fit Injuria" ("That to which a person assents is not esteemed in law an injury"). Broom's Legal Maxims (5th ed., 1870).
This universal principle, however, has its equitable limitations. One of these is that he who pays through error what is not due, may reclaim what has been paid. Civil Code Article 2302.[2] Thus, the provision of Code Article 2301, permitting recovery of payments made when not owed to the receiver, must be understood as subject to the requirement of Article 2302 that they have been paid through mistake. Rivers v. New Orleans Water Works Company, 35 La.Ann. 822 (1883). See also Planiol, Civil Law Treatise, Volume 2, Section 840 (LSLI translation, 1959).
In refusing to apply this general principle, the majority relies upon Civil Code Article 2304: "A thing not due is that which is paid on the supposition of an obligation [a] which did not exist, or [b] from which a person has been released." The majority interprets the latter ("b") part of this article to mean that a payor is entitled to recover a payment made for a debt due at the time which is later released through a resolutory condition.
I respectfully submit that such an interpretation is erroneous. Pertinently, the article provides that recovery is permitted of payments made "on the supposition of an obligation * * * from which a person has been released."
The intended meaning of "supposition" in this context must be in the dictionary sense of something which is mistakenly believed to be an obligation, but one which has actually been released.[3] To hold otherwise deprives the word "supposition" of any meaning in the article, so that article is amended to omit the phrase and as if it read: "A thing not due is that which is paid on an obligation which did not exist, or from which a person has been released."
Likewise, the article does not apply to a payment made upon an obligation valid at the time which is subsequently annulled or avoided. The article applies only to a payment on an obligation "from which a person has been released." This is the present perfect tense of the verb, and "The present perfect tense shows that an act has been completed prior to the present". The Macmillan Handbook of English, p. 245 (1963).
In holding that repetition lies for the present voluntary payment, the majority relies upon Planiol's statement that the action is permitted where the payment is voluntarily made without mistake in view of an actual obligation which has since ceased to exist. Planiol Sections 837, 842-844. As to this type of obligation, it is suggested that no "error" is required because *715 the annulment or resolution of a condition upon which the contract has been made takes the place of error. Section 843. The example given is when the buyer voluntarily paying the price to mortgage creditors at execution sale is evicted by a third party with a superior title. Section 844.
The majority's reasoning is forceful and persuasive. If payment is made upon an obligation subject to a resolutory condition, I have no doubt that it should be restored should the resolving condition occur (a) when both parties knew of the resolutory condition or (b) when the payor did not know of it, such as where unknownst to him there was a defect in his purchaser's title so the sale was subsequently rescindable through this resolutory condition. Indeed, I think this to be the thrust of the Planiol discussion, although there is much reason to accept the majority's interpretation of it.
In any event, I do not think this sort of reasoning should apply here. The payor unconditionally paid an amount only conditionally owed. Insofar as the payee is concerned, the belated claim for refund is generically identical to a claim based upon a contention of no obligation at all at the time (instead of upon an obligation unknown at the time to be subject to resolution), for years later the return is now claimed of money he has received and spent in the belief he is entitled to keep it. Generically, the stabilizing social principle should apply that the equities favor the innocent recipient rather than the one who voluntarily paid with full knowledge that he might not owe it.
Under such circumstances, the party who paid with full knowledge of the facts should not have recovery. To protect himself and to avoid the disruptive effects upon the finances of the innocent recipients of a subsequent claim for refund, the payor could simply have put the payee upon notice that such payments were made subject to a later claim for refund.
Insofar as the plaintiff debtor now claims that payments were made under duress, our jurisprudence is clear that under circumstances such as the present one cannot voluntarily make the payments with full knowledge of the facts, and without protest, and yet later claim that business duress forced them. The decisions earlier cited rejected similar claims of duress under circumstances where actual coercive tactics by the payees were at issue.
Whitehall's petition pleads for reimbursement because of unjust enrichment.
This claim for unjustified enrichment is essentially founded upon Civil Code Article 1965. This article provides for application of the principle preventing unjust enrichment only, however, in the instances where the law or the contract is silent as to the rights of the parties as to the recovery sought. Moore v. Housing Authority of City of Opelousas, La.App. 3 Cir., 125 So.2d 504, 508; Clark v. Shaffett, La.App. 1 Cir., 37 So.2d 56, 58-59.
Thus, for the doctrine of unjustified enrichment to apply, there must not only be an enrichment of one person and the impoverishment of another, but also an absence of a legal cause for the enrichment of one at the expense of the other. Thompson v. Taylor, La.App.3rd Cir., 192 So. 2d 609, Nicholas, Unjustified Enrichment in the Civil Law and Louisiana, La., 36 Tul.L.Rev. 605 (Part 1) (1962), 37 Tul. L.Rev. 49 (Part II) (1962); Planiol, Civil Law Treatise, Volume 2, Sections 932-938 (LSLT Translation, 1959); 2 Dalloz Repertoire de Droit Civil, "Enrichissment sans Cause", Section 3, Nos. 71-131 (1952). "* * * The action will not lie if the enrichment and impoverishment is justified by a rule of law." Nicholas, cited above, at 37 Tul.L.Rev. 605, 635.
In the present instance, the plaintiff is not entitled to recover on the grounds of unjustified enrichment. The payees are entitled to keep what has been paid to them voluntarily and with full knowledge of the facts, because of the stabilizing *716 legal principle preventing payors from disturbing the status quo by demanding reimbursement subsequently of payments made by them voluntarily with full knowledge of the facts justifying them to withhold or to condition their payment.
For the reasons assigned, I respectfully dissent.

On Application for Rehearing.
En Banc. Rehearing denied.
TATE, J., dissents.
NOTES
[1] Two royalty owners, Mrs. Susan B. Gardiner and Richard O. Eckhart, voluntarily remitted the alleged overpayments made to them, but the defendants in the present suit refused.
[2] The lease dated December 13, 1959 provides that on gas the royalty is "the market value free of cost of production and delivery of one-eighth of the gas so sold or used. * * *" This lease further states: "In any case where lessee sells gas or plant products of his and lessor's, lessor shall receive the same price and terms as lessee and in such cases the gas of both parties shall be measured in the same manner." The assignment of overriding royalty dated December 13, 1959 pertains to this lease and states that the overriding royalty shall be calculated and paid in the same manner that is provided in the lease.

The royalty clause in the lease dated December 7, 1959 is somewhat different, as it provides: "The royalty on gas sold by lessee to be one-fourth of the amount realized at the well from such sales."
[3] Art. 2301. He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it.

Art. 2302. He who has paid through mistake, believing himself a debtor, may reclaim what he has paid.
Art. 2303. To acquire this right, it is necessary that the thing paid be not due in any manner, either civilly or naturally. A natural obligation to pay will be sufficient to prevent the recovery.
Art. 2304. A thing not due is that which is paid on the supposition of an obligation which did not exist, or from which a person has been released.
Art. 2305. That which has been paid in virtue of a void title is also considered as not due.
Art. 2306. The payment from which we might have been relieved by an exception that would extinguish the debt, affords ground for claiming restitution.
Art. 2307. But this exception must be such that it shall extinguish even all natural obligation. Thus he who, having the power to plead prescription, shall have made payment, can not claim restitution.
Art. 2308. It is considered that a thing has been paid, when not due, if the payment was made by virtue of an agreement, the effect of which is suspended by a condition, the event of which is uncertain.
Art. 2309. This principle must not be extended to things due on a day certain, nor to conditions which must certainly happen.
[4] Planiol, Vol. 2, Part I, pgs. 448-454, Secs. 835-846; Great American Indemnity Co. v. Dauzat, 157 So.2d 308 (La. App., 3d Cir. 1963); Ark. Fuel Oil Co. v. Williams, 183 So. 128 (La.App.2d Cir. 1938); LSA-C.C. Art. 2133.
[5] See the Case Note in 20 Tul.Law Rev. 618 for a review of the history of Article 2302 and its interpretation.
[6] LSA-C.C. Article 2308 affords similar relief where the condition is suspensive. See also Articles 2021, 2023, 2042 and 2045 on suspensive and resolutory conditions.
[7] 40 Am.Jur. 831, Verbo Payments, Sec. 171 defines this exception to the general rule of voluntary payment as a situation "where by reason of the peculiar facts a reasonably prudent man finds that in order to preserve his property or protect his business interest it is necessary to make a payment of money which he does not own and which in equity and good conscience the receiver should not retain. * * *"
[8] The amounts of principal to be refunded by the respective royalty owners vary from about $2380.80 down to $152 and aggregate about $9,458.37 in the two cases.
[1] Article 2304 provides: "A thing not due is that which is paid on the supposition of an obligation which did not exist, or from which a person has been released."
[2] Article 2302 provides: "He who has paid through mistake, believing himself a debtor, may reclaim what he has paid."
[3] Webster's Seventh New Collegiate Dictionary (1967): verbo "supposition": "something which is supposed"; verbo "supposed": "Believed; also: mistakenly believed".